**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| In re: | * | Case No. 26-13271-LSS |
| MULFORD CONSTRUCTION CO., INC. | * | Chapter 11 |
| *Debtor* | * | |
| *   *   *   *   *   *   * | * | *   *   *   *   * |
| MULFORD CONSTRUCTION CO., INC. | * | Adv. Pro. No. 26-00130 |
| *Plaintiff,* | * | |
| v. | * | |
| GRANITE MERCHANT FUNDING, LLC, *et al.* | * | |
| *Defendants.* | * | |
| *   *   *   *   *   *   * | * | *   *   *   *   * |

**GRANITE MERCHANT FUNDING, LLC'S RESPONSE TO PLAINTIFF'S MOTION**
**FOR TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF, AND**
**EXTENSION OF THE AUTOMATIC STAY TO KURT FOWLER**

Pursuant to the Order Shortening Response Deadline and Setting Expedited Hearing (ECF 7) entered May 27, 2026, Defendant Granite Merchant Funding LLC ("Granite"), through its undesigned counsel respectfully submits this response and objection to Plaintiff/Debtor Mulford Construction Co, Inc.'s ("Debtor") request for temporary restraining order, injunctive relief, and extension of the automatic stay to non-party Kurt Merle Fowler ("Fowler") and in support states as follows:

**FACTS**

The relevant facts are taken from the Complaint and other filings by Debtor:

1.      Debtor has been in business since 1976. *In re Mulford Construction Co., Inc.*, Case No. 26-13271-LSS ("Main Case") ECF 15 at ¶ 2.

1

2.     Fowler is the Chief Executive Officer (CEO)[1] and sole equity holder of Mulford Construction Co., Inc. a corporation organized under the laws of the state of Maryland. (Main Case ECF 15 ¶ 1).

3.     In 2024 and 2025, Debtor had over $50 million in revenue. (Main Case, ECF ¶ 11).

4.     Debtor employs approximately 135 full-time employees (Main Case ECF 15 at ¶ 19) and also states it has over 150 employees. (Main Case, ECF 15 ¶ 6).

5.     Debtor maintains various employment benefit plans and policies, including, without limitation, medical and prescription plans, dental plans, a vision plan, and voluntary life insurance. (Main Case, ECF 13 at ¶ 19.)

6.     In 2024 Debtor had over $58,000,000.00 in revenue, and in 2025 Debtor had over $56,000,000.00 in revenue.

7.     On March 24, 2026, Granite Merchant Funding, LLC filed a case captioned *Granite Merchant Funding, LLC v. Mulford Construction Co. and Karl Merle Fowler* in the Circuit Court for Calvert County, Maryland, Case No. C-04-CV-26-000124.

8.     On March 27, 2026, Debtor filed a voluntary Chapter 11 bankruptcy petition. Fowler has not filed a personal bankruptcy petition, and is not a party to this adversary proceeding.

9.     On April 27, 2026, Debtor removed the state court lawsuit to this Court, Adv. Proc. No.: 26-00112 (the "Granite Adversary"). Fowler has not filed a responsive pleading in the Granite Adversary, and the parties have filed a Consent Motion asking that his response deadline "be extended until ten (10) days after the later of: (a) the lifting of any stay imposed by the Emergency

---

[1] According to Debtor's website, accessed May 29, 2026, in addition to Fowler, Debtor employes a President, Vice President, Chief Operating Officer, and several other director/manager/executive employees. *See* https://mulfordconstruction.com/about-us/.

2

Motion for TRO; or (b) the Bankruptcy Court's denial of the Emergency Motion for TRO." (Granite Adversary, ECF No. 12).

## STANDARD OF REVIEW

Debtor seeks to prohibit Defendants from pursuing their state law claims (the "State Law Claims") against Fowler by asking this Court to 1) extend Debtor's automatic stay pursuant to 11 U.S.C. § 362 to Fowler and/or 2) invoke its equitable discretion under 11 U.S.C. § 105(a) and enjoin Defendants from litigating the State Law Claims. In the Fourth Circuit, such an extension of the automatic stay requires a showing of "unusual circumstances[.]" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). And, to obtain a preliminary injunction a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

## ARGUMENT

I. **NON-DEBTOR KURT FOWLER IS NOT ENTITLED TO AN EXTENSION OF THE AUTOMATIC STAY.**

A. **The Automatic Stay May Be Extended to Non Debtors Only Where "Unusual Circumstances" Are Present.**

Non-party non-debtor Kurt Fowler is not entitled to the protection of the automatic stay without undertaking the obligations of the Bankruptcy Code and filing a petition for bankruptcy relief. It is black letter law that the automatic stay imposed by 11 U.S.C. § 362 does not generally apply to non-debtors. "The plain language of § 362, however, provides only for the automatic stay of judicial proceedings and enforcement of judgments 'against the debtor or the property of the estate.'" *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988) (quoting *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 126–27 (4th Cir.1983)). Thus, the default is that no such extension of the automatic stay may be had. In *A.H. Robins Co*, 788 F.2d 994, the Fourth

3

Circuit held that in "unusual circumstances" a court, pursuant to section 362 of the Bankruptcy Code, "may properly stay proceedings against non-bankrupt codefendants of the bankruptcy debtor" and that "[s]uch unusual circumstances might arise where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," *id.* at 999, or where proceedings against non-debtor codefendants would reduce or diminish "the property of the debtor [such as the debtor's insurance fund or pool] to the detriment of debtor's creditors as a whole." *Id.* at 1008.

B.    **Debtor Cannot Show "Unusual Circumstances".**

The existence of a corporate debt guaranteed by an associated individual is far from unusual. As the Fourth Circuit explained in a similar context:

> There is nothing "unusual" about this guaranty agreement that would permit the guarantor, Williams, to invoke the statutory protection of § 362 or that would permit us to stay the enforcement of the New York judgment against him on equitable grounds. *See A.H. Robins,* 788 F.2d at 1000. It is unnecessary to stay proceedings or void the judgment against the non-bankrupt guarantor to protect Penn Hook or to prevent the dissipation of its assets, since neither Penn Hook nor its estate is jeopardized by the judgment against Williams. "The very purpose of a guaranty is to assure the [creditor] that in the event the [debtor] defaults, the [creditor] will have someone to look to for reimbursement." *Rojas v. First Bank National Ass'n,* 613 F.Supp. 968, 971 (E.D.N.Y.1985). The purpose of the guaranty would be frustrated by interpreting § 362 so as to stay Credit Alliance's action against the non-bankrupt guarantor when the defaulting debtor petitioned for bankruptcy.

*Credit Alliance Corp.,* 851 F.2d 119 at 121–22.

This principle has been followed by the U.S. District Court for the District of Maryland in *Feargrounds, LLC v. Old Time Contractors, Inc.,* Civ. No. WDQ-10-0087, WDQ-10-0088, 2010 WL 1759577 (D. Md., Apr. 30, 2010) (no basis for extending the automatic stay because under

4

Maryland law "an LLC is treated as a separate legal entity for purposes of liability and property ownership"). In *Feargrounds*, Judge Quarles reasoned that "[t]here is not such an identity of interests between *Feargrounds* and its members that a judgment against the individual members is effectively a judgment against *Feargrounds*." *Id.* at *3. The same is true here because there has been no showing of an "identity of interests" between Mulford Construction Co, Inc. and Fowler.

First, Fowler and Mulford Construction Corp. Inc. are separate legal persons[2] and there is not "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). Second, Mulford is a major construction company with tens of millions of dollars in revenue and more than one hundred employees. Concluding that Fowler and Mulford Construction's interest are identical would undermine the principle of corporate personhood and would be a drastic disregard for the corporate form. Fowler's declaration that he is the sole equity owner does not change the analysis. Under *Piccinin*, "unusual circumstances" are found when there is an identify of interest. *See Doyle v. Fleetwood Homes of Virginia, Inc.*, 2009 WL 1210697 (Apr. 30, 2009) ("The close relationship between the debtor its codefendants present in *Piccinin* is lacking here. *See generally Kreisler*, 478 F.3d at 213 (affirming refusal to expand stay to include wholly owned subsidiary of debtor corporation and stating 'there exists no basis for us to conclude that there is such identify between Bask [debtor] and its wholly owned subsidiary, Just, that a judgment against Just would effectively operate as a judgment against Bask."). As in *Doyle*, Debtor has not shown an identity between Debtor and Fowler.

---

[2] "[A] corporation is a distinct legal entity, separate and apart from its stockholders." *Frederick P. Winner, Ltd v. Pabst Brewing Company*, 249 Md. App. 402, 420 (2021) (citations omitted).

5

In its Complaint, Debtor alleges that Fowler is Debtor's "foremost key employee" and that continued litigation against him personally will "unnecessarily divert [his] time and resources" and will have a "direct substantial adverse impact on the administration of the estate and the ability of the Debtor to successfully consummate a plan of reorganization…." (Complt. 44). Debtor seeks to persuade the Court that Fowler is effectively the only one who can run the company. Debtor's other statements to the Court in previous filings undermine this story. Debtor alleges the following facts in its Emergency Motion for Authority to Pay Pre-Petition Accrued Wages, Payroll Taxes, and Employee Benefits [ECF 13].[3]

- o  Debtor has over 135 employees and operations in the mid-Atlantic.
- o  Debtor's employees perform a "variety of functions critical to the preservation of value and the administration of the Debtor's estate" including "administrative, management, and manual laborers." ECF 13 at 4.
- o  Debtor is in its 50th year of business. ECF 13 at 2.
- o  Debtor had 58.4 million in revenue in 2024. ECF 13 at 3.
- o  Debtor had 56.4 million in revenue in 2025. ECF 13 at 3.

The Court should not be persuaded that Debtor, with its 135-150 employees and $50 million or more in revenue is solely reliant on Fowler for its reorganization. These facts clash Debtor's own filings and with the case relied on Debtor, *In re Shearin Family Investments*, LLC, 2009 WL 3106477 (Bkrtcy.E.D.N.C.,2009), where Shearin had <u>no other employees</u> and his involvement in a construction project was "in the final stages of completion." *Id.* Unlike in *In re Shearin*, Mulford Construction "has a significant amount of future revenue under contract with

---

[3] In addition, Fowler testified in his Declaration in Support of First Day Motions (Main Case ECF 15) that:

1) he made that declaration based, in part on "information supplied to me or verified by other members of the Company's management" (Id., ¶4);

2) Debtor has "financial advisors" who are "in the process of evaluating each of" Defendants' contracts (Id., ¶8); and

3) Debtor's employees, including "administrative" and "management" employees, "perform a variety of functions critical to the preservation of value and the administration of the Debtor's estate[.]" (Id., ¶19).

6

existing jobs that comprise a significant asset of the Debtor's estate." Main Case, ECF 15. Further, Debtor does not intend to rely solely on Fowler, or any of Debtor's employees, to manage its reorganization, but instead has retained Traxi LLC to provide Debtor a "full range of financial services unique to the reorganization process" which are recounted in detail in Debtor's Application for Authority to Employ Traxi LLC as Financial Advisors for Debtor and Debtor-in-Possession (Main Case ECF 70). Debtor accordingly has deep and wide resources to manage its reorganization, regardless of whether Fowler is afforded an extraordinary extension of the automatic stay.

C.    **Fowler's Potential Right to Indemnification By Debtor Does Not Establish "Unusual Circumstances"**

Fowler argues that because he *may* be entitled to indemnification by the debtor that he should be granted an extension of the automatic stay. This argument is rejected in the case law, which Debtor fails to address. Debtor references *Credit Alliance Corp v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988), for the general proposition that the automatic stay does not prevent actions against guarantors of loans. But Debtor fails to distinguish that case or explain how it helps Debtor. The case of *CresCom Bank v. Terry*, 499 B.R. 494, 497 (D.S.C. 2013), relied heavily on *Credit Alliance* in rejecting a similar indemnification argument. The *CresCom* Court explained:

> The Court is not persuaded that unusual circumstances are present in this case. Unlike the debtor in *Piccinin,* **CCT is not facing thousands of lawsuits**. Furthermore, a judgment against Terry would not deplete the existing bankruptcy estate as would have a judgment against the codefendants in the *Piccinin* case. *See Credit Alliance,* 851 F.2d at 121–22 ("It is unnecessary to stay proceedings … against the non-bankrupt guarantor to protect [the debtor] or to prevent the dissipation of its assets, since neither [the debtor] nor its estate is jeopardized by the judgment against [its guarantor]."). Far from unusual, CresCom merely seeks to continue its action against a non-debtor guarantor. The guaranties at issue are unconditional guaranties of payment and primary obligations of Terry in his

7

individual capacity. "Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt." *Credit Alliance,* 851 F.2d at 121. "The very purpose of a guaranty is to assure the creditor that in the event the debtor defaults, the creditor will have someone to look to for reimbursement." *Id.* at 122 (quotation and alterations omitted). This purpose "would be frustrated by interpreting § 362 so as to stay [the creditor's] action against the non-bankrupt guarantor when the defaulting debtor petitioned for bankruptcy." *Id.* Moreover, a statutory right to bring an action for indemnification is not sufficient to justify extension of the automatic stay. *See Doyle v. Fleetwood Homes of Va., Inc.,* C.A. No. 2:08–1442, 2009 WL 1210697, at *2 (S.D.W.Va. Apr. 30, 2009) **("Simply because [the non-debtor codefendants] may be entitled to contribution or indemnity from [the debtor] does not call for expansion of the stay imposed by § 362(a)(1).").** In *Credit Alliance,* **the Fourth Circuit refused to expand the automatic stay to include the guarantor of a note despite the fact that the guarantor would be entitled to bring claims for reimbursement through the bankruptcy proceedings.** 851 F.2d at 120–21. The Court fails to see how the instant case differs from *Credit Alliance.*

*CresCom Bank v. Terry,* 499 B.R. 494, 497 (D. S.C. 2013) (emphases added).

Debtor alleges it "has potential indemnity obligations arising out of the State Court litigation that would make judgments against Mr. Fowler tantamount to judgments against the Debtor." Complt. ¶ 53. An allegation of a *potential* obligation is insufficient.[4] *See Williams v. Fouts-Sneed,* 2024 WL 3297511, at *3 (S.D.W.Va., 2024); *Forcine Concrete & Const. Co. v. Manning Equip. Sales & Serv.,* 426 B.R. 520 (E.D. Pa. 2010) (denying extension of bankruptcy stay because no automatic right to absolute indemnification and, thus, there would be no "immediate adverse economic consequence for the debtor's estate."); *Doyle v. Fleetwood Homes of Va., Inc.,* 2009 WL 1210697, at *2 (S.D.W. Va. Apr. 30, 2009) (Copenhaver, J.) (finding that

---

[4] And if it were, the essential effect would be to extend the stay as a matter of right to a debtor's personal guarantors, in contravention of the express language of the Bankruptcy Code.

non-debtor defendants had not offered evidence that they would have been entitled to "absolute indemnity" as required by Robins and, accordingly, were not entitled to the benefits of the automatic stay); *Dunnam v. Sportsstuff, Inc.*, 2008 WL 200287, at *3 (E.D. Va. Jan. 23, 2008) (extending automatic stay to a non-debtor defendant where the non-debtor and debtor defendants had an agreement that "unambiguously state[d]" that the debtor defendant would indemnify the non-debtor defendant); *but see Holland v. High Power Energy*, 248 B.R. 53 (S.D.W. Va. 2000) (Copenhaver, J.) (declining to extend automatic stay even in face of indemnification agreement). Here, Debtor does not even allege, much less demonstrate with evidence, that Debtor is obligated to provide Fowler absolute indemnity. This Court should follow the binding authority of *Credit Alliance* and the persuasive analysis of *CresCom Bank* and find that no "unusual circumstances" are present.

## II. FOWLER IS NOT ENTITLED TO AN INJUNCTION OR TRO TO AVOID HIS PERSONAL OBLIGATIONS TO GRANITE.

### A. The Injunction and TRO Requests Are Procedurally Flawed Because Fowler Has No Standing Because He Is Not A Party.

Debtor asks this Court for the extraordinary relief of an injunction to enjoin Granite from pursuing its claim against Fowler. This request should be denied because it is procedurally and substantively flawed. It is procedurally defective because Fowler is not a party. Under 11 U.S.C. § 1109(b), "a party in interest, including the debtor, the trustee, a creditors' committee, an equity security holder, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue" in a bankruptcy case. Fowler is not a party to this adversary proceeding and Debtor cannot bring a claim on his behalf. Curiously, although Debtor removed the Circuit Court for Calvert County case to this Court – where Fowler is a party – neither Fowler nor Debtor sought an injunction in that case. Instead, Debtor filed a separate adversary proceeding

9

to request an injunction benefiting only a non-party. An injunction should be denied based on Debtor's lack of standing to assert a claim on behalf of a non-party. But even if Debtor could properly bring a request for an injunction benefiting only Fowler, Debtor fails to satisfy the familiar four prong injunction test.

### A. **Debtor Is Unlikely To Succeed on the Merits.**

Debtor contends it is likely to succeed on the merits arguing it will confirm a plan of reorganization. *See* Complt. ¶¶ 49–50. That standard was established in *In re Bestwall LLC*, 71 F.4th 168 (4th Cir. 2023), but was in the context of a preliminary injunction of asbestos injury claims that were to be subject to a channeling injunction in the proposed plan of reorganization. But that is not the issue before the Court. The question is whether the *automatic stay should extend to Debtor's CEO, Kurt Fowler*, who seeks the protections of bankruptcy without entering the bankruptcy process or accepting the obligations imposed by the Bankruptcy Code. Debtor and Fowler are unlikely to succeed because the "unusual circumstances" exception does not apply as explained *supra.* There is no argument that Debtor's potential reorganization hinges upon a channeling injunction with respect to contract claims against Fowler. The mere potential for indemnification and the legal distinction between Debtor and Fowler, its CEO and owner, place this case in the heartland of the general rule that the automatic stay does not apply to non-debtors.

### B. **Debtor Will Not Be Irreparably Harmed**.

Debtor will not be irreparably harmed without an injunction. Debtor has the benefit of the automatic stay and able attorneys and financial advisors protecting its interests. Debtor's own submissions to the Court indicate it has multiple other managers and directors who can operate the construction business. And, as mentioned above, Debtor asserts that it is likely to reorganize successfully. While Debtor contends that Fowler may be required to provide debtor-in-possession

10

financing, it does not explain in any way why *only* Fowler could potentially do so, particularly given Debtor's ongoing business operations and lack of bank debt.

### C. The Balance of Hardships Weighs in Granite's Favor.

Fundamentally, Fowler asks this Court to extend to him the benefit of our bankruptcy system without any equivalent benefit to creditors and without undertaking the obligations of personal bankruptcy. If Fowler is right, he will receive the protection of the automatic stay without placing his personal assets into a bankruptcy estate and accounting for his assets and liabilities. If Fowler wishes to be shielded from creditors, as is his right, then he can file a personal bankruptcy. But until he does so, his guaranty of performance should remain subject to litigation. If Debtor prevails, Granite and other creditors will be unfairly prejudiced because they will not be able to enforce personal claims against Fowler, either in litigation or in the administration of his own potential bankruptcy case. Therefore, the balance of hardships tilts heavily in Granite's favor.

### D. The Public Interest Will Be Undermined by Enjoining Granite From Pursuing Its Claim Against Fowler.

Courts weighing injunctions must consider the public interest. Here, the public interest is served by denying an injunction. Granting an injunction will undermine the delicate balance of interests built into the Bankruptcy Code. In *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), the Supreme Court announced: "The Bankruptcy Code strikes a balance between the interests of insolvent debtors and their creditors." The Supreme Court rejected an argument promoting "the unadulterated pursuit of the debtor's interest" because "[t]he Code, like all statutes, balances multiple, often competing interests." The Supreme Court notes that Chapter 11 strikes "a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate." *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 51, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008).

11

Debtor's pursuit of an automatic stay for a non-filing guarantor falls far short of the target. *Piccinin's* requirement of "unusual circumstances" highlights that in the ordinary, usual, and typical case the automatic stay is limited to debtors. Here, Debtor's assertions are insufficient because *potential* indemnification is not enough and Debtor has no identity of interests or legal personhood with Fowler. This is not the case of a single member LLC that is the functional equivalent of the individual guarantor. Debtor has at least 135 employees, including those in management and administration who can manage Debtor. Finding "unusual circumstances" would cut against the public interest. In addition, as the Court is aware and as the cases cited above recognize, lenders and other sources of business funding routinely require personal guaranties in transactions of all sizes. Enjoining the Defendants from collecting on those guaranties would call into question that routine structure of financing arrangements and could result in less credit available to businesses generally. Therefore, this Court should decline to enter injunctive relief.

## **CONCLUSION**

This case is well within the holding of *Piccinin* that only a debtor who files a petition for bankruptcy protection is entitled to the automatic stay. Debtor has failed to provide evidence from which this Court may find "unusual circumstances" warranting a deviation from the general rule. Extending the stay would be a major deviation from Fourth Circuit precedent and would extend *Piccinin* far beyond its boundaries. Accordingly, Debtor's motion should be denied.

Dated: May 29, 2026

Respectfully submitted

_/s/ Pierce C. Murphy_
Mark Edelson (Bar No. 29433)
Pierce C. Murphy (Bar No. 30030)
Michael J. Levin (Bar No. 19802)
Silverman Thompson Slutkin & White
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
(T) (410) 385-2225
(F) (410) 547-2432
medelson@silvermanthompson.com
pmurphy@silvermanthompson.com
mlevin@silvermanthompson.com
_Counsel to Granite Merchant Funding, LLC_

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I filed the forgoing Response in Opposition to Debtor's Request for a TRO in the CM / ECF e-filing portal, which served a true copy upon all counsel of record.

_/s/ Pierce C. Murphy_
Pierce C. Murphy (Bar No. 30030)

13