**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | * | |
| MULFORD CONSTRUCTION CO., INC., | * | Case No.: 26-13271 |
| Debtor. | * | (Chapter 11) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| MULFORD CONSTRUCTION CO., INC., | | |
| Plaintiff, | * | |
| | * | |
| v. | | |
| | * | Adv. Pro. No. 26-00130 |
| GRANITE MERCHANT FUNDING, LLC, et al., | | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMMERCIAL CREDIT GROUP, INC.'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Commercial Credit Group, Inc. ("CCG"), by counsel, hereby opposes the Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") filed by Mulford Construction Co., Inc. (the "Debtor"), and requests that the Court deny the requested extraordinary relief as to CCG because the Debtor has not shown a clear likelihood of success, irreparable harm, a favorable balance of equities, or entitlement to the extraordinary relief sought, and in support hereof states as follows:

**BACKGROUND**

1.      The Debtor seeks to halt ordinary collection litigation against its non-debtor principal, Kurt Fowler, based largely on conclusory assertions that litigation will distract him from

1

bankruptcy-related duties. But the automatic stay does not ordinarily protect non-debtors, including guarantors and officers, and the Debtor's papers do not establish the kind of "unusual circumstances" required for extension of the stay.

2.      As to CCG, the Motion is especially weak. CCG's state-court action concerns seven commercial equipment notes and a straightforward breach-of-contract claim against Mr. Fowler as guarantor and against the other guarantors of the amounts owed by the Debtor. The Debtor identifies no absolute indemnity obligation, no identity of interests sufficient to make Mr. Fowler the "real party defendant," and no concrete showing that litigation against Mr. Fowler will impair the administration of the bankruptcy estate.

3.      The Debtor is currently indebted to CCG under and in connection with seven loans extended by CCG between 2023 and 2025 that enabled the Debtor to acquire 45 pieces of construction equipment.

4.      By Guaranty dated April 10, 2015, William M. Fowler, Kurt M. Fowler, and Karen M. Fowler agreed, among other things, to guarantee payment of all present and future obligations of the Debtor to CCG. Per Debtor's 341 testimony, Kurt M. Fowler's parents William Fowler and Karen Fowler were co-owners of the Debtor and Kurt M. Fowler did not become the sole owner of the Debtor until 2023 when he bought out his parents. A true and accurate copy of the 2015 Guaranty is attached hereto as **Exhibit 1.**

5.      By Guaranty dated January 26, 2023, Chesapeake Environmental Materials, LLC, agreed, among other things, to guarantee payment of all present and future obligations of the Debtor to CCG. A true and accurate copy of the 2023 Guaranty is attached hereto as **Exhibit 2.**

6.      The Complaint and the Motion both incorrectly allege that CCG filed suit against the Debtor. (Motion at ¶ 19; Complaint at ¶ 18). That is patently untrue and is belied by the

Debtor's own exhibits which demonstrate that CCG filed suit against Chesapeake Environmental Materials, LLC, William M. Fowler, Kurt M. Fowler, and Karen M. Fowler (the "Guarantors"). *See* Exhibit B to Motion. To be excruciatingly clear, CCG has not initiated any post-petition collection efforts against the Debtor and has not violated the automatic stay in any way.

7.    However, CCG has proceeded with collection efforts against the Guarantors. CCG has elected to do so given that, since the commencement of the bankruptcy proceedings over two months ago, (i) no equity holder has made a significant cash infusion into the Debtor; (ii) the Debtor does not appear to be making significant adequate protection payments to impacted creditors; and (iii) there is no clearly-confirmable plan of reorganization sitting on the docket. Taken together, these indicators point to an administrative insolvency where the debtor is bleeding cash without a realistic prospect of reorganization.

## ARGUMENT

### I.    This Court Lacks Subject Matter Jurisdiction.

8.    This Court has jurisdiction over matters "arising under," "arising in," or "related to" cases under Title 11. 28 U.S.C. § 1334(a), (b).

9.    Matters arising under Title 11 are main bankruptcy cases; matters arising in Title 11 are those core proceedings "which would not exist outside of a bankruptcy case, such as preference claims under Section 547 of the Bankruptcy Code, or motions for the authority to use cash collateral under Section 363 of the Code." *In re D.C. Diamond Corp.*, No. 12-16730-BFK, 2020 WL 6876758, at *3 (Bankr. E.D. Va. Aug. 14, 2020) *(citing Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007)). *See also Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003). "A controversy arises in Title 11 when 'it would have no practical

3

existence but for the bankruptcy.'" *Id. (citing A.H. Robins Co., Inc. v. Dalkon Shield Claimants Trust*, 86 F.3d 364, 372 (4th Cir. 1996)).

10.     The underlying action involving a purely state law claim for damages between two non-debtor parties does not involve any core claims.

11.     "With respect to 'related to' jurisdiction, the Fourth Circuit has adopted the test set out in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) … which holds that a matter is 'related to' a bankruptcy case where 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re D.C. Diamond Corp.*, No. 12-16730-BFK, 2020 WL 6876758, at *4 (Bankr. E.D. Va. Aug. 14, 2020) (*citing Pacor*, 743 F.2d at 994).

12.     Debtor claims that "continued State Court Litigation against Mr. Fowler … will have a material adverse effect on Debtor's reorganization" because "requiring him to personally defend against the allegations … will require significant time and money" and because "[i]n many if not all instances, Mr. Fowler will have indemnification rights against the Debtor. Thus, the continuation of the State Court Litigation against Mr. Fowler will have an adverse effect on the Debtor's reorganization because of the indemnification claims that Mr. Fowler will have against the estate." Motion, ¶¶ 38-39.

13.     However, Mr. Fowler's right to indemnification is extremely questionable as underscored by the prevarication in the Complaint: "Mr. Fowler *could* assert indemnification claims so any judgment against him *could* result in additional claims against the Debtor's estate." (Complaint, Section I) (emphasis added); "Mr. Fowler is also *likely* to have indemnification rights against the Debtor for any debts he is [sic] pays on its behalf." (Complaint, ¶ 28) (emphasis added); "the Debtor has *potential* indemnity obligations arising out of the State Court Litigation" (Complaint, ¶ 53) (emphasis added); "will *likely* result in claims for indemnity against the Debtor's

4

estate." (Complaint, ¶ 56) (emphasis added). The complete lack of any supporting documentation or legal argument showing that Mr. Fowler has an **absolute right** to indemnification by the Debtor renders the Debtor's arguments hollow.

14.     The argument that CCG's claims against Mr. Fowler could result in additional claims against the Debtor is even less convincing since such claims would be barred unless Mr. Fowler had actually paid CCG both by paragraph 5 of his 2015 Guaranty ("Guarantor shall have no right of subrogation against [Borrower] unless and until the Obligations are paid in full, and [CCG] shall have all the rights and remedies of Guarantors in any bankruptcy or insolvency proceedings of [Borrower] unless and until the Obligations are paid in full.") and by §§502(e)(1)(C)[1] and 509(c)[2] of the Code. Even if he paid CCG in full, there would not be an additional claim. Mr. Fowler's claim would merely replace CCG's claim.

II.     The Debtor Is Not Entitled to Injunctive Relief.

15.     As Debtor recognizes in paragraph 34 of the Motion, it is black-letter law that the automatic stay does not apply to non-debtors such as Fowler. *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *In re Forever 21, Inc.*, 623 B.R. 53, 63 (Bankr. D. Del. 2020). Nor does it "prevent actions against guarantors of loans" (*Winters By & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996) (further citation omitted)) or "actions against non-debtor obligors, debtor's sureties or guarantors. It does not protect separate legal

---

[1] "…the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor … to the extent that [ ] such entity asserts a right of subrogation to the rights of such creditor under section 509…".

[2] "The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement of contribution, of an entity that is liable with the debtor … until such creditor's claim is paid in full…".

entities, corporations, partnerships or non-debtor co-defendants in pending litigation." *In re Lengacher*, 485 B.R. 380, 383 (Bankr. N.D. Ind. 2012); *see also In re White*, 415 B.R. 696, 698 (Bankr. N.D. Ill. 2009) ("Generally, the automatic stay protects the bankruptcy debtor and does not bar suits against third parties, such as non-debtor entities, even when wholly owned by the debtor, or the debtor's insurers, guarantors, and sureties."). As the Third Circuit Court of Appeals explained in *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991), "formal distinctions between debtor-affiliated entities are maintained when applying the stay. A proceeding against a non-bankrupt corporation is not automatically stayed by the bankruptcy of its principal, and section 362 does not bar an action against the principal of a debtor-corporation." *Id.* at 1205 (citations omitted).

16.    "[C]ourts generally apply the traditional preliminary injunction test when deciding whether to issue an injunction pursuant to section 105(a)." *In re Forever 21, Inc.* 563 B.R. 53, 64 (Bankr. D. Del. 2020). In other words, a debtor seeking to obtain an injunction extending the automatic stay must show a substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief is in the public interest. *Id.*; see also *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023); *Medicalincs, LLC v. Coordinating Ctr. for Home & Cmty. Care, Inc.*, 686 F. Supp. 3d 415, 419 (D. Md. 2023).

17.    Courts generally look to the same factors when determining whether to issue a temporary restraining order, but this Court has, in at least one case, elevated the standard for likelihood of success to a "'strong probability of success on the merits.'" *See, In re Advanced Marketing Svcs., Inc.*, 360 B.R. 421, 426 (Bankr. D. Del. 2007) (*quoting Philips Petroleum Co. v. U.S. Steel Cor*p., 616 F.Supp. 335, 337 (D. Del. 1985). Any order extending the automatic stay

6

"must be consistent with the purpose of the stay itself, that is, to 'suspend actions that pose a serious threat to a corporate debtor's reorganization efforts.'" *In re Uni-Marts, LLC*, 405 B.R. 113, 127 (Bankr. D. Del. 2009) (*citing Ochs v. Lipson (In re First Cent. Fin. Corp*.), 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999)).

### A.  The Debtor Has Not Shown a Likelihood of Success on the Merits

18.      As an initial matter, the complaint underlying this adversary proceeding (the "Complaint") sets forth only two counts and neither are causes of action. Count I is for "Extension of Automatic Stay"; while this form of relief does require the filing of an adversary proceeding, the relief sought is injunctive in nature. *Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc.),* 623 B.R. 53, 64 (Bankr. D. Del. 2020). As such, Count I is a form of relief, not a cause of action. *Blankenship v. Consolidation Coal Co*., 850 F.3d 630, 640 (4th Cir. 2017) ("Injunctive relief is a remedy, not a cause of action."). Likewise, Count II is for "Injunctive Relief 11 U.S.C. § 105(a)." Again, this is not a cause of action. *Id.*  Since Debtor has failed to plead a cognizable cause of action, Debtor is unlikely to succeed on the merits.

19.      The "likelihood of success under the first prong is interpreted by bankruptcy courts as the equivalent of the debtor's ability to successfully reorganize." *In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 106 (E.D. Pa. 2010). The Debtor's burden is not satisfied by showing only that it has filed a chapter 11 case and hopes to reorganize. The Fourth Circuit standard requires a real showing that the requested injunction is warranted under the facts, not a generalized statement that litigation is inconvenient.

20.      The Motion does not identify any authority requiring CCG to stop pursuing a non-debtor guarantor merely because the guarantor is the debtor's CEO. The Debtor's reliance on

7

"unusual circumstances" is unsupported here because CCG's claim is a routine commercial collection action, not a claim whose adjudication would automatically bind the Debtor.

21. The Motion and the Complaint both allege that Mr. Fowler is "is the primary person running the day-to-day operations of the Debtor and is responsible for: (i) the overall operations of the Debtor; (ii) negotiations with creditors and parties in interest; (iii) maintaining the Debtor's workforce at appropriate levels; (iv) seeking debtor-in-possession financing and potential sale partners; (v) formulating a feasible plan of reorganization or liquidation; (vi) compliance with the duties and responsibilities of the Debtor as a debtor-in-possession; and (vii) the overall performance of the Debtor in this chapter 11 case."

22. However, the Debtor expressly sought and obtained this court's permission to hire Traxi, LLC as a financial advisor to provide substantially the same duties that Mr. Fowler was performing, such as "Assisting with restructuring negotiations with stakeholders and their representatives;" "Assisting with negotiations with creditors and MCAs;" "Communicating with subcontractors, customers, and vendors as necessary;" "Assisting with the development of the Debtor's future business plan, and related forecast for us in negotiations with lenders and other stakeholders, and for other corporate purposes;" "Advising the Debtors in its oversight and management of financial performance in accordance with the business plan and compliance with the covenants under the debtor-in-possession financing or cash collateral order, if any;" "Assisting with developing project plans, including the timing of milestones and milestone interdependencies, communication frameworks, governance structure, resource requirements, and the responsibilities of various project teams/participants;" "Assisting with the preparation of the statement of financial affairs, bankruptcy schedules, account analyses, monthly reports, reconciliations, including

8

reconciliations of claims, bankruptcy petitions, the plan of reorganization and other documentation required by the bankruptcy court;" etc. [ECF No. 70, page 5].

**B. The Debtor Has Not Shown Irreparable Harm**

23. The Debtor's claimed harm is that Mr. Fowler must spend time defending lawsuits. That is not irreparable harm; it is the ordinary burden of litigation, and the Motion supplies no evidence that it cannot be managed. The Motion also offers only speculation that an adverse judgment against Mr. Fowler would generate indemnity claims against the estate.

24. Again, Courts view the irreparable harm prong through the lens of a debtor's reorganizational efforts. They assess whether the continuation of a legal action will harm the debtor's reorganization, for example, by diverting management resources or delaying the reorganization. *See, e.g., In re Continental Airlines, Inc*., 177 B.R. 475, 481n.6 (D. Del. 1993); *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 617 (Bankr. E.D. Pa. 2009).

25. As to CCG, the Debtor does not identify any absolute indemnification right. Without such a showing, the Debtor cannot transform a guaranty case into irreparable injury to the estate. Nor does the Motion explain why the litigation against Mr. Fowler, as opposed to the Debtor itself, would prevent a plan from being proposed or confirmed.

**C. The Balance of the Equities Favors CCG**

26. CCG is entitled to pursue its contractual remedies in the forum where it filed suit. The Debtor asks this Court to freeze a creditor's collection rights based on generalized bankruptcy concerns, but CCG faces concrete prejudice from delay, including stale evidence, continued accrual of losses, and loss of its bargained-for remedies under the Notes and guaranties.

27. The Debtor's papers also rely on assertions that CCG is merely one of several lenders, but that does not justify depriving CCG of its separate rights. The equities favor allowing

9

CCG to continue its action absent a particularized showing that the estate, not just Mr. Fowler, will be irreparably harmed.

28.     Further, and as Debtor acknowledges, non-debtors are not to be shielded by the automatic stay:

> Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so. Chapter 13, for example, contains a narrowly drawn provision to stay proceedings against a limited category of individual cosigners of consumer debts.  No such protection is provided to the guarantors of Chapter 11 bankrupts by § 362(a).

*Credit All. Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988) (*citing Williford v. Armstrong World Industries, Inc*., 715 F.2d 124, 126-27 (4th Cir. 1983); 11 U.S.C. § 1301(a*)). See also CresCom Bank v. Terry*, 499 B.R. 494, 496 (D.S.C. 2013) ("Section 362(a) of the Bankruptcy Code provides that the filing of a petition for bankruptcy operates as a stay against all entities in any litigation against the debtor that commenced prior to the filing of the petition. This automatic stay provision applies to judicial proceedings and enforcement of judgments against only the debtor, not third party defendants or co-defendants.") (*citing* 11 U.S.C. § 362(a)(1); *Williams*, 851 F.2d at 121 (4th Cir. 1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

### D.  The Public Interest Does Not Support the Requested Relief

29.     Here, again, the reorganizational framework for extending the automatic stay is paramount. "In the context of bankruptcy proceedings, the 'public interest' element means 'the promoting of a successful reorganization.'" *In re American Film Techs., Inc*. 175 B.R. 847, 849 (Bankr. D. Del. 1994) (*quoting Gathering Restr., Inc. v. First National Bank of Valparaiso (In re Gathering Restr., Inc.),* 79 B.R. 992, 999 (Bankr. N.D. Ind. 1986)). Extending the stay here would not promote any reorganization and therefore would not be in the public interest.

10

30. The public interest supports enforcement of valid commercial agreements and respect for the limits of the automatic stay. Extending bankruptcy protection to a non-debtor officer and guarantor on this record would create an unwarranted expansion of stay protections and invite routine litigation over ordinary guaranty claims.

31. The Debtor's invocation of reorganization policy cannot displace the settled rule that the stay generally applies to the debtor alone. The public interest is not served by insulating a guarantor from claims absent proof of the narrow circumstances required by governing precedent.

32. CCG also notes that the underlying financing documents, as described in the papers, include arbitration and forum-selection language, which may provide CCG with independent defenses or procedural rights depending on the operative contract and any election made by the parties. The Motion does not address those provisions in a way that justifies emergency injunctive relief.

33. The Debtor's filing also does not establish that CCG engaged in conduct threatening the bankruptcy estate. The CCG complaint is a standard breach-of-contract action, and the Motion presents no facts suggesting harassment, collateral estoppel risk unique to CCG, or conduct that would distinguish CCG from any other ordinary lender.

E. **The Debtor Has Failed to Demonstrate the Existence of "Unusual Circumstances" That Would Justify Extension of the Automatic Stay.**

34. Debtor's failure to satisfy any prong of the test for a temporary restraining order or preliminary injunction is fatal to the Motion, and the Court should deny the Motion solely on those grounds. Nevertheless, the Motion also fails, separately and independently, because the Debtor has not demonstrated that "unusual circumstances" justify extending the automatic stay.

35.     The Third Circuit has acknowledged the power of courts to extend the automatic stay to non-debtor co-defendants in "unusual circumstances." *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1997). One such unusual circumstance arises when "stay protection is essential to the debtor's efforts of reorganization." *Id.* (citations omitted). No such circumstance exists here

36.     Relying the Fourth Circuit's decision in *A.H. Robins v. Piccinin*, the Third Circuit and courts elsewhere have also found "unusual circumstances" where "'there is such an identity between the debtor and the third-party defendant that a judgment against the defendant will in effect be a judgment or finding against the debtor.'" *Id. (quoting A.H. Robins v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

37.     Taken on its face, the oft-quoted phrase from the *A.H. Robins* case about identity of interests would suggest that the "unusual circumstances" exception could swallow the "universally acknowledged" rule that "an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors or others with a similar legal or factual nexus" to the debtor. *McCartney*, 106 F.3d at 509- 10 (*quoting Maritime*, 959 F.2d at 1205) (citations omitted). However, shortly after the *A.H. Robins decision*, the Fourth Circuit clarified that the mere existence of a contractual guaranty relationship was not sufficient to establish "unusual circumstances" warranting extension of the automatic stay. In *Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir. 1988), the Fourth Circuit addressed an appeal lodged by the guarantor of a promissory note, who argued that the default judgment against him was rendered void by the borrower's bankruptcy petition. The Fourth Circuit held that "[t]here is nothing 'unusual' about this guaranty agreement that would permit the guarantor . . . to invoke the statutory protection of § 362 or that would permit us to stay enforcement of the New York judgment against

him on equitable grounds. . . . [N]either Penn Hook [the debtor] nor its estate is jeopardized by the judgment against Williams. The purpose of the guaranty would be frustrated by interpreting § 362 so as to stay [the Lender's] action against the non-bankrupt guarantor when the defaulting debtor petitioned for bankruptcy." *Id.* at 121-22.

38.     Other courts have affirmed the basic principle that the existence of a guaranty or indemnity agreement between a debtor and a non-debtor is not sufficient to create "unusual circumstances." *See, e.g., In re Brier Creek Corp. Ctr. Assocs. Ltd*., 486 B.R. 681, 690 (Bankr. E.D.N.C. 2013) (holding that "a suit against a debtor's guarantor does not in and of itself constitute "unusual circumstances" and that "other circumstances" must be present to bring the guarantor within the scope of the exception); *Chicago Title Ins. Co. v. Lerner*, 435 B.R. 732, 736-37 (S.D. Fla. 2010) (holding that there was no adverse effect on a debtor by the enforcement of a non-debtor guaranty, when "enforcing the guaranty would only replace one creditor with another"); *In re Veeco Inv. Co., L.P*., 157 B.R. 452, 454 (Bankr. W.D. Mo. 1993) (holding that the "unusual circumstances" exception does not apply to a non-debtor surety whose obligations are independent and primary and not derivative of those of the debtor); *Algemene Bank Nederland, N.V. v. Hallwood Indus. Inc*., 133 B.R. 176, 180 (Bankr. W.D. Pa. 1991) (holding that the existence of an indemnity agreement alone did not create the identity of interest necessary to extend the stay).

39.     Further, at least one bankruptcy court has held that the "unusual circumstances" exception simply does not apply where, as here, the guarantor is the debtor, and the creditor is seeking to recover from a non-debtor primary obligor. *In In re Strak,* Case No. 18-22185, 2018 WL 6566622 (Bankr. D.N.J. Dec. 11, 2018), the United States Bankruptcy Court for the District of New Jersey addressed a request by a debtor guarantor to extend the stay to his non-debtor majority-owned limited liability company, the primary obligor on a mortgage note. The court

13

rejected the debtor's request, stating: "Unlike in A.H. Robins and its progeny, no unusual circumstances are alleged here. In this situation, if the court were to extend the automatic stay to a primary obligor when the case was filed by a mere guarantor it would flip the reasoning of those cases on their heads." *Id.* at *2.

40.     The Motion does not allege any "other circumstances" beyond an alleged identity of interest between the Debtor and Mr. Fowler that would justify an extension of the automatic stay. However, Debtor does not provide any facts or argument to support the existence of the claimed identity of interest. Debtor waives at the suggestion that Mr. Fowler and the Debtor are alter egos, but the case law has established – including the seminal *A.H. Robins* decision – that alter ego claims are precisely the types of claims that do not establish a unity of interest under the "unusual circumstances" standard. Courts have expressly declined to extend the automatic stay where the liability of the non-debtor co-defendant is separate and independent of the liability of the debtor, for example, in the case of joint and several liability. *See, e.g., A.H. Robins*, 788 F.2d at 999 (noting that the automatic stay would not extend to a non-debtor that is "independently liable as, for example, where the debtor and another are joint tort feasors or where the non-debtor's liability rests upon his own breach of duty") (*quoting In re Metal Center*, 31 B.R. 458, 462 (D. Conn. 1983)); *Mardice v. Ebony Media Ops., LLC*, 19-CV-8910 (VSB), 2021 WL 146358 (S.D.N.Y. Jan. 15, 2021). *See also Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.,* 945 F.Supp. 603, 609 (S.D.N.Y. 1996).

## CONCLUSION

WHEREFORE, CCG respectfully requests that this Court enter an Order denying the Debtor's Motion and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

14

/s/ Jessica L. Duvall
Stanford G. Gann, Jr., Federal Bar No. 07680
Jessica L. Duvall, Federal Bar No. 21241
LEVIN GANN PA
1 West Pennsylvania Avenue, Suite 900
Towson, Maryland 21204
(410) 321-4666 – Direct Dial
(833) 801-1118 – facsimile
sgannjr@levingann.com
jduvall@levingann.com

*Attorneys for Commercial Credit Group Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 29, 2026, a copy of the foregoing Response was served by mailing a copy thereof by electronic mail or first-class, postage prepaid, upon the following parties:

Blade Funding Corp
18851 NE 29th Avenue
Aventura, FL 33180

Commercial Credit Group Inc.
c/o Cogency Global Inc. (resident agent)
1519 York Road
Lutherville, MD 21093

D-Route Logistics Inc.
c/o Eric Baker General Counsel
10610 Rhode Island Avenue, Suite 200
Beltsville, MD 20705

I further certify that on May 29, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing Response will be served electronically by the Court's CM/ECF system on the following parties:

- **Aaron L. Casagrande**   Aaron.casagrande@Icemiller.com
- **Richard L. Costella**   rcostella@tydings.com,
  myoung@tydings.com;pcoolbaugh@tydings.com
- **Kevin G. Hroblak**   kevin.hroblak@icemiller.com, madelin.hill@icemiller.com

15

- **Pierce C Murphy**   pmurphy@mdattorney.com, efiling@silvermanthompson.com
- **Dennis J. Shaffer**   dshaffer@tydings.com,
  scalloway@tydings.com;MYoung@tydings.com
- **Megan Young**   myoung@tydings.com

*/s/ Jessica L. Duvall*
Jessica L. Duvall