# EXHIBIT 3

E-SERVED Case 26-000130 County 3/24/2026 Filed 01/05/2026 Systeme 22 of 79 25699755

E-FILED; Calvert Circuit Court
Docket: 3/24/2026 4:46 PM; Submission: 3/24/2026 4:46 PM
Envelope: 25699755



# CIRCUIT COURT FOR CALVERT COUNTY, MARYLAND

175 Main Street, Prince Frederick, Maryland, 20678
Main: 410-535-1600
Civil: 410-535-1600 x2268
Family/Child Support: 410-535-1600 x2396
Juvenile: 410-535-1600 x2237
Criminal: 410-535-1600 x2270
Assignment: 410-535-1600 x2372
Maryland Relay Service: 711
MD Toll Free: 1-888-535-0113

**To:** KURT MERLE FOWLER
1440 OLD ADELINA ROAD
PRINCE FREDERICK, MD 20678

|  |  |
|---|---|
| **Case Number:** | **C-04-CV-26-000124** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**GRANITE MERCHANT FUNDING, LLC VS. MULFORD CONSTRUCTION CO., INC., ET AL.**

Issue Date: 03/24/2026

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

GRANITE MERCHANT FUNDING, LLC
102 W 38th Street
6th Floor
New York NY 10018

This summons is effective for service only if served within 60 days after the date it is issued.

*Kathy P. Smith*

Kathy P Smith
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.

**CC-CV-032 (Rev. 03/2024)**        **Page 1 of 3**        **03/24/2026 4:44 PM**

**Circuit Court for Calvert County**

**Granite Merchant Funding, LLC vs. Mulford Construction Co., Inc., et al.Case Number: C-04-CV-26-000124**

2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Calvert County**

Granite Merchant Funding, LLC vs. Mulford Construction Co., Inc., et al.Case Number: C-04-CV-26-000124

## SHERIFF'S RETURN
### (please print)

To: KURT MERLE FOWLER

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
                                                      Name of person served

on _____ at _____
         Date of service                                    Location of service

_____ by _____ with the following:
                                                      Manner of service

☐ Summons                                    ☐ Counter-Complaint

☐ Complaint                                  ☐ Domestic Case Information Report

☐ Motions                                    ☐ Financial Statement

☐ Petition and Show Cause Order              ☐ Interrogatories
☐ Other _____
              Please specify

(2) Was unable to serve because:

☐ Moved left no forwarding address           ☐ No such address

☐ Address not in jurisdiction                ☐ Other _____
                                                            Please specify

Sheriff fee: $ _____                ☐ waived by


_____          _____
        Date                      Signature of serving Sheriff


Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

IN THE CIRCUIT COURT FOR Calvert County (CC)

City/County

## CIVIL – NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

**Plaintiff:** This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).
**Defendant:** You must file an Information Report as required by Rule 2-323(h).

*THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT         **CASE NUMBER** _____

(Clerk to insert)

**CASE NAME:** Granite Merchant Funding, LLC     vs.     Mulford Construction Co., Inc., et al.

Plaintiff                                                          Defendant

**PARTY'S NAME:** _____ **PHONE:** _____

**PARTY'S ADDRESS:** _____

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** Mark Edelson          **PHONE:** 410-385-2225

**PARTY'S ATTORNEY'S ADDRESS:** 400 East Pratt Street, Suite 900, Baltimore, MD 21202

**PARTY'S ATTORNEY'S E-MAIL:** medelson@silvermanthompson.com

**JURY DEMAND?** ☐ Yes ☒ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** 0 _____ hours 0 _____ days

### PLEADING TYPE

**New Case:** ☒ Original    ☐ Administrative Appeal    ☐ Appeal
**Existing Case:** ☐ Post-Judgment    ☐ Amendment
*If filing in an existing case,* skip Case Category/Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Child Victims Act
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of
  Youngest Plt: _____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☒ Breach
☐ Business and Commercial
☐ Confessed Judgment
  (Cont'd)
☐ Construction
☐ Debt

☐ Fraud
☐ Government
☐ Insurance
☐ Product Liability
**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property/
  Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate
Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance
  Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

CC-DCM-002 (Rev. 03/2026)                Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☐ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☒ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☐ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.　　☐ Liability is not conceded, but is not seriously in dispute.　　☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000　　☐ $10,000 - $30,000　　☒ $30,000 - $100,000　　☐ Over $100,000

☐ Medical Bills $_____　☐ Wage Loss $_____　☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| | | | |
|---|---|---|---|
| A. Mediation | ☐ Yes ☒ No | C. Settlement Conference | ☐ Yes ☒ No |
| B. Arbitration | ☐ Yes ☒ No | D. Neutral Evaluation | ☐ Yes ☒ No |

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL.***

### (Case will be tracked accordingly)

☒ 1/2 day of trial or less　　　☐ 3 days of trial time

☐ 1 day of trial time　　　　　☐ More than 3 days of trial time

☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of　　☒ **Standard** - Trial within 18 months of

Defendant's response　　　　　　　　　　　Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❏ **Expedited** - Trial within 7 months of Defendant's response

❏ **Standard** - Trial within 18 months of Defendant's response

### *IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ❏ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❏ Civil-Short | Trial 210 days from first answer. |
| ❏ Civil-Standard | Trial 360 days from first answer. |
| ❏ Custom | Scheduling order entered by individual judge. |
| ❏ Asbestos | Special scheduling order. |
| ❏ Lead Paint | Fill in: Birth Date of youngest plaintiff _____. |
| ❏ Tax Sale Foreclosures | Special scheduling order. |
| ❏ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ❏ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ❏ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❏ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❏ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

| | | |
|---|---|---|
| March 24, 2026 | /s/ Mark Edelson | 1012140227 |
| Date | Signature of Attorney/Party | Attorney Number |
| 400 East Pratt Street, Suite 900 | Mark Edelson | |
| Street Address | Printed Name | |
| Baltimore     MD     21202 | medelson@silvermanthompson.com | |
| City     State     Zip Code | E-mail | |

**CC-DCM-002** (Rev. 03/2026)                    Page 3 of 3

IN THE CIRCUIT COURT FOR CALVERT COUNTY, MARYLAND

-------------------------------------------------------------------x

GRANITE MERCHANT FUNDING, LLC,

      Plaintiff,

v.

                                      Case No.

MULFORD CONSTRUCTION CO., INC., and
KURT MERLE FOWLER, *individually,*

      Defendants.

-------------------------------------------------------------------x

## COMPLAINT

**COMES NOW** the Plaintiff, GRANITE MERCHANT FUNDING, LLC, (hereinafter referred to as "GRANITE"), and hereby sues Defendants, MULFORD CONSTRUCTION CO., INC., (hereinafter referred to as "MCC"), KURT MERLE FOWLER (hereinafter referred to as "FOWLER"), individually, and states:

### PARTIES, JURISDICTION, AND VENUE

1. GRANITE is a foreign limited liability company authorized to conduct business in the State of Florida.

2. Defendant, MCC, is a MARYLAND Corporation Company with a principal place of business located at 171 Skipjack Road, Prince Frederick, MARYLAND 20678.

3. Defendant, FOWLER, is the Registered Agent and an Authorized Member of MCC, and is a resident of CALVERT County, MARYLAND.

4. This Court has jurisdiction over the subject matter of this action in that the amount in controversy exceeds $30,000, exclusive of attorneys' fees and costs, and is within the jurisdictional threshold of this Court.

5.     Defendants are subject to the jurisdiction of this Court, as MCC operates and holds its principal place of business in CALVERT County, MARYLAND.

6.     All conditions precedent to the filing of this action have occurred or have been waived.

7.     Plaintiff has retained the undersigned attorneys to represent it in this action and has agreed and obligated itself to pay a reasonable fee for their services.

## COMMON ALLEGATIONS

9.     On or about May 29, 2025, GRANITE and MCC entered into a Revenue Based Financing Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto and marked as **COMPOSITE EXHIBIT A**.[1]

10.     The Agreement memorialized a revenue-based financing arrangement whereby MCC sold, assigned, and transferred its rights, title, and interest in a portion of its future receivables in exchange for a lump sum purchase price paid by GRANITE.

11.     Pursuant to the Agreement, GRANITE (the "Purchaser") purchased $2,600,000.00 (the "Purchased Amount") of the Future Receipts of MCC (the "Seller") for $2,000,000.00 (the "Purchase Price"). Id., at p. GRANITE-001.

12.     The Agreement defines "Future Receipts" as "all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card . . . or other form of monetary payment in the ordinary course of Seller's business." Id.

13.     Pursuant to the Agreement, MCC sold, assigned, and transferred to GRANITE "without recourse, upon payment of the Purchase Price, the Purchased Amount of Future Receipts

---

[1] The undersigned represents that he has redacted the personal and/or protected information contained thereof, and a complete, unredacted copy is available for production or at the direction of the Court.

by delivering to Purchaser the Specified Percentage of the proceeds of each future sale by Seller." Id. In this case, the Specified Percentage was 5%.

14.     Pursuant to the Agreement, MCC agreed to "(1) ... deposit all Future Receipts into only one bank account, which must be acceptable to and pre-approved by the Purchaser (the "Account") and (2) instruct Seller's Credit Card processor... to deposit all Credit Card receipts of Seller into the Account. Purchaser will debit the Weekly Payment from the Account each Week." **COMPOSITE EXHIBIT A**, at p. GRANITE-002.

15.     At the time of contracting, Defendant provided financial information and otherwise represented to GRANITE that $52,000.00 represented the Specified Percentage of MCC's then-estimated Weekly Future Receipts; this amount was memorialized in the Agreement. Id., at p. GRANITE-001 and 011.

16.     Said withdrawals were a good faith estimate of the Specified Percentage of MCC's receivables at the time the Agreement was executed. As further set forth in the Agreement, to the extent that the Initial Weekly Payment subsequently ceased to represent 5% of MCC's Weekly Receipts, MCC was permitted to request, and GRANITE was obligated to perform, a reconciliation of the Weekly Payment amount in order to adjust the same to more closely reflect MCC's actual Weekly Future Receipts. Id., at p. GRANITE-002.

17.     MCC authorized GRANITE to withdraw the Weekly Payments by ACH (Automated Clearing House) each business Week. Id., at p. GRANITE-002-003.

18.     The Agreement contains a "Purchaser Acknowledgement" provision, which states that "[t]here is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser. Seller going bankrupt or going out of business, in and of

itself, does not constitute a breach of this Agreement." **COMPOSITE EXHIBIT A**, at p. GRANITE-002.

19. GRANITE performed its obligations under the Agreement by remitting the Purchase Price to MCC, which remittance constituted the Purchase Price minus (a) fees set forth in the Agreement. Id., at p. GRANITE-001.

20. Paragraph 3.1 of the Agreement ("Events of Default") defines an Event of Default to include "Seller intentionally interfer[ing] with Purchaser's right to collect the Weekly Payment in violation of this Agreement." Id., at p. GRANITE-007.

21. Beginning on or about March 18, 2026, MCC defaulted on the Agreement by failing to remit payment to GRANITE as agreed. Specifically, on one occasion, the ACH payments set-up to remit the Weekly Payment from MCC were returned with the Stop Code "R08", meaning "Payment Stopped." *See* Account Ledger, a true and correct copy of which is attached hereto and marked as **EXHIBIT B**.

22. In the Addendum to the Agreement, MCC agreed that in the event of a default, MCC will be charged a default fee of $5,000.00.

23. ACH payments from MCC were returned as "NSF" on March 18, 2026. Id.

24. GRANITE sent numerous e-mails and text messages to MCC and FOWLER regarding the failed transactions.

25. In the Addendum to the Agreement, MCC agreed that "[i]f an ACH is rejected based on any action taken by [MCC] to our specific ACH debit or All ACH debits without prior notification and authorization by [GRANITE]" then MCC would be charged a fee of $100.00 per occurrence/incident. **COMPOSITE EXHIBIT A**, at p. GRANITE-014.

26.     MCC owes a balance of Future Receipts to GRANITE of \$834,785.00,[2] inclusive of default fees, plus attorneys' fees, and other costs of collection as set forth in Paragraph 3.2 of the Agreement. Id., at p. GRANITE-007.

27.     FOWLER personally guaranteed the Agreement. The Performance Guaranty expressly states:

5.1     **Personal Guaranty of Performance.** Guarantor (i) will derive direct or indirect economic benefit from this Agreement and (ii) is directly or indirectly involved in the business operations of Seller. As an inducement to Purchaser to purchase the Future Receipts, Guarantor agrees to irrevocably, absolutely and unconditionally guarantee to Purchaser prompt and complete performance of the following obligations of Seller (the "Guaranteed Obligations"):

    5.1.1     Seller's obligation to provide bank statements and other financial information that fairly represent the financial condition of Seller at such dates, within 5 business Weeks after request from Purchaser;

    5.1.2     Seller's obligation to not change its Credit Card processor, add terminals, change its financial institution or bank account(s), use multiple bank accounts, or take any similar action that could have an adverse effect upon Seller's obligations under this Agreement, without Purchaser's prior written consent;

    5.1.3     Seller's obligation to not conduct Seller 's businesses under any name other than as disclosed to Processor and Purchaser;

    5.1.4     Seller's obligation to not change any of its places of business or the type of business without prior written consent by Purchaser; and

    5.1.5     Seller's obligation to not voluntarily sell, dispose, transfer or otherwise convey its business or substantially all business assets without (i) the express prior written consent of Purchaser, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Purchaser.

In the event that Seller fails to perform any of the Guaranteed Obligations, Purchaser may recover from Guarantor for all of Purchaser's losses and damages and all remedies specified in Section 3.2 of this Agreement by enforcement of Purchaser's rights under this Performance Guaranty without first seeking to obtain payment from Seller or any other guarantor, or any other guaranty.

**COMPOSITE EXHIBIT A**, at p. GRANITE-009.

28. On March 18, 2026, GRANITE attempted to withdraw the Weekly Payment from MCC's bank account, but GRANITE received notification of a Payment Stopped (R08) from MCC'S bank when it attempted an ACH withdrawal. As a result, MCC incurred an NSF Fee on this date. *See* **EXHIBIT B.**

29. On March 20, 2026, in accordance with the terms of the Agreement,[2] MCC incurred a UCC Fee. A true and correct copy of the UCC Financing Statement is attached hereto marked as **EXHIBIT C.**

30. MCC ceased remitting to Plaintiff the Plaintiff's share of the Purchased Receivables as required by the Agreement and otherwise breached the Agreement by intentionally impeding and preventing Plaintiff from receiving the Specified Percentage of Defendant MCC's receivables, while conducting regular business operations and collecting revenue.

31. On March 18, 2026, GRANITE deemed MCC in default pursuant to the Agreement.

32. Upon information and belief, MCC continues to operate and generate Future Receipts, which are GRANITE's property pursuant to the Agreement, without turning said Future Receipts over to GRANITE.

33. Defendant FOWLER breached their Performance Guaranty by diverting Defendant MCC's receivables from the Account and preventing Plaintiff from obtaining its purchased receivables.

---

[2] **COMPOSITE EXHIBIT A**, at p. GRANITE-014.

34.   Paragraph 5 of the Agreement allows GRANITE to recover from FOWLER without first seeking to obtain payment from MCC. *See* **COMPOSITE EXHIBIT A**, at p. GRANITE-009.

35.   In the Remedies provision of Paragraph 3.2, "[E]verest may proceed to protect and enforce its rights and remedies by lawsuit" and "Seller FOWLER be liable for all of Purchaser's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs." Id., at p. GRANITE-007.

## COUNT I – BREACH OF CONTRACT
### (AGAINST DEFENDANT MULFORD CONSTRUCTION CO., INC.)

36.   GRANITE adopts and realleges paragraphs 1-35 as if fully set forth herein.

37.   The Agreement is a written contract setting forth the rights and obligations of the parties with respect to MCC's sale of its Future Receipts to GRANITE to obtain working capital from GRANITE.

38.   The Agreement is a valid and enforceable contract between Plaintiff and Defendant MCC.

39.   GRANITE is, and at all relevant times was, in full compliance with all of its obligations under the Agreement.

40.   Defendant MCC's failure to timely remit the agreed upon future receivables constitutes a material breach of its contractual obligations under the Agreement.

41.   On information and belief, Defendant MCC is still conducting regular business operations and still collecting receivables.

42.   GRANITE has suffered damages as a direct and proximate result of MCC's breach of contract, including but not limited to, the loss of the unpaid Weekly Payments of Future

Receipts, prejudgment interest, default fees, and the attorneys' fees and costs incurred recovering the balance due.

43.    GRANITE and MCC were parties to the Agreement.

44.    GRANITE fully complied with all obligations contained within the Agreement.

45.    MCC breached the Agreement as it failed to maintain sufficient funds in its designated bank account for GRANITE to make ACH withdrawals of the Weekly Payment amount.

46.    As a result of MCC's breach, GRANITE has been damaged in the amount of $834,785.00. Specifically, MCC owes $832,000.00 in future receivables, a default fee of $2,500.00, $35.00 in NSF fees, and a UCC fee of $250.00.

**WHEREFORE**, the Plaintiff, GRANITE MERCHANT FUNDING, LLC, demands a judgment against the Defendant, MULFORD CONSTRUCTION CO., INC, for damages in an amount in excess of $75,000.00 (SEVENTY-FIVE THOUSAND DOLLARS), pre-judgment interest and attorneys' fees and costs, and for all other relief this Court deems appropriate under these circumstances.

## COUNT II – BREACH OF GUARANTY
(AGAINST DEFENDANT KURT MERLE FOWLER)

47.    GRANITE adopts and realleges paragraphs 1-46 as if fully set forth herein.

48.    On or about May 29, 2025, Defendant FOWLER executed a personal guaranty in favor of GRANITE. *See* **COMPOSITE EXHIBIT A**, at p. GRANITE-002.

49.    FOWLER personally guaranteed the Agreement.

50.    The Performance Guaranty expressly states:

**5.1** **Personal Guaranty of Performance.** Guarantor (i) will derive direct or indirect economic benefit from this Agreement and (ii) is directly or indirectly involved in the business operations of Seller. As an inducement to Purchaser to purchase the Future Receipts, Guarantor agrees to irrevocably, absolutely and unconditionally guarantee to Purchaser prompt and complete performance of the following obligations of Seller (the "Guaranteed Obligations"):

**5.1.1** Seller's obligation to provide bank statements and other financial information that fairly represent the financial condition of Seller at such dates, within 5 business Weeks after request from Purchaser;

**5.1.2** Seller's obligation to not change its Credit Card processor, add terminals, change its financial institution or bank account(s), use multiple bank accounts, or take any similar action that could have an adverse effect upon Seller's obligations under this Agreement, without Purchaser's prior written consent;

**5.1.3** Seller's obligation to not conduct Seller's businesses under any name other than as disclosed to Processor and Purchaser;

**5.1.4** Seller's obligation to not change any of its places of business or the type of business without prior written consent by Purchaser; and

**5.1.5** Seller's obligation to not voluntarily sell, dispose, transfer or otherwise convey its business or substantially all business assets without (i) the express prior written consent of Purchaser, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Purchaser.

In the event that Seller fails to perform any of the Guaranteed Obligations, Purchaser may recover from Guarantor for all of Purchaser's losses and damages and all remedies specified in Section 3.2 of this Agreement by enforcement of Purchaser's rights under this Performance Guaranty without first seeking to obtain payment from Seller or any other guarantor, or any other guaranty.

**COMPOSITE EXHIBIT A**, at p. GRANITE-009.

51.      The Performance Guaranty imposed a contractual obligation on FOWLER to "irrevocably, absolutely and unconditionally guarantee to [GRANITE] prompt and complete performance of the following obligations of [MCC]," including "to not change its Credit Card processor, add terminals, change its financial institution or bank account(s), use multiple bank accounts, or take any similar action that could have an adverse effect upon Seller's obligations under this Agreement, without Purchaser's prior written consent." *See* **COMPOSITE EXHIBIT**

**A**, at p. GRANITE-009 ¶ 5.1.2.

52.     Defendant FOWLER was at all times relevant in control of Defendant MCC. Defendant FOWLER's breach of the Performance Guaranty results from his actions in diverting Defendant MCC's receivables from the Account and preventing Plaintiff from obtaining its purchased receivables.

53.     GRANITE has been damaged by Defendant FOWLER's breach of the Performance Guaranty, including but not limited to, the loss of the balance due under the Agreement, default fees, prejudgment interest, and attorneys' fees and costs incurred in enforcing its rights under the Agreement.

54.     FOWLER breached the personal guaranty by MCC not having sufficient funds available at MCC's financial institution and thusly rejecting all Weekly Payments from GRANITE when GRANITE attempted to withdraw the Weekly Payment from MCC's bank account.

55.     As a direct and proximate result of FOWLER's breach of the personal guaranty, GRANITE has been damaged in the amount of $834,785.00.

**WHEREFORE**, the Plaintiff, GRANITE MERCHANT FUNDING, LLC, demands a judgment against the Defendant KURT MERLE FOWLER for damages in an amount in excess of $75,000.00 (SEVENTY-FIVE THOUSAND DOLLARS), pre-judgment interest and attorneys' fees and costs, and for all other relief this Court deems appropriate under these circumstances.

### COUNT III - UNJUST ENRICHMENT
(AGAINST ALL PARTIES IN THE ALTERNATIVE)

56.     GRANITE adopts and realleges paragraphs 1-55 as if fully set forth herein.

57.     GRANITE provided business funding to the Defendant, which was incorporated into the business serviced by, operated by, owned and/or leased by the Defendant.

58.     GRANITE has conferred a benefit upon the Defendant in the form of business funding, for which both parties were fully aware.

59.     The Defendant voluntarily accepted and retained the benefit conferred by GRANITE without rendering full payment in return.

60.     GRANITE did not supply the business funding gratuitously, and the Defendant has knowledge of this fact.

61.     The Defendant has been unjustly enriched by incorporation of the business funds into the business serviced by, operated by, owned and/or leased by the Defendant without payment for same.

62.     Accordingly, the circumstances are such that it would be inequitable for the Defendant to retain the benefit without paying the value thereof to GRANITE.

63.     Moreover, GRANITE incurred attorneys' fees and costs in the pursuit of this debt.

**WHEREFORE**, the Plaintiff GRANITE MERCHANT FUNDING, LLC, demands a judgement against the Defendant, MULFORD CONSTRUCTION CO., INC. and KURT MERLE FOWLER for damages in an amount in excess of $75,000.00 (SEVENTY-FIVE THOUSAND DOLLARS), pre-judgment interest and attorneys' fees and costs, and for all other relief this Court deems appropriate under these circumstances.

Dated: March 24, 2026

Respectfully submitted,

_/s/ Mark Edelson_

Mark Edelson (AIS No. 1012140227)
Michael J. Levin (AIS No. 1512160050)
Silverman Thompson Slutkin & White
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
(T) (410) 385-2225
(F) (443) 547-2432
medelson@silvermanthompson.com
mlevin@silvermanthompson.com

*Attorneys for Granite Merchant Funding, LLC*

# COMPOSITE EXHIBIT A

COMPOSITE EXHIBIT A

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA



## REVENUE BASED FINANCING AGREEMENT

This Revenue Based Financing Agreement ("Agreement") dated 05/29/2025, is made by and between Granite Merchant Funding, LLC ("Purchaser"), the business identified below ("Seller"), and the owners of the Seller identified below (each a "Performance Guarantor").

### SELLER'S INFORMATION

| Legal Business Name | MULFORD CONSTRUCTION CO., INC. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D/B/A | | | | | | | | | |
| Type of Business Entity | Corp. | ✔ | Limited Liability Company | | Partnership | | Limited Partnership | | |
| | Limited Liability Partnership | | | | Sole Proprietorship | | Other | | |
| Physical Address | 171 SKIPJACK RD | | | | | | | | |
| City | PRINCE FREDERICK | | State | | MD | Zip | | 20678 | |
| Mailing Address | 171 SKIPJACK RD | | | | | | | | |
| City | PRINCE FREDERICK | | State | | MD | Zip | | 20678 | |
| Contact Name | KURT MERLE FOWLER | | | | | | Position | | |
| Business Phone | | | | | Cell Phone | | | | |
| Email | | | | | Website | | | | |
| Date Business Started | 01/1976 | | | | Federal Tax Id | | | | |
| Monthly Avg Sales | $4,841,348.66 | | | | Annual Sales | | $58,096,183.93 | | |

### GUARANTOR'S INFORMATION

| Name: kurt merle fowler | Address: | |
|---|---|---|
| Name: | Address: | |

### OFFER TO SELL AND PURCHASE PAYMENT RIGHTS

Seller hereby sells, assigns and transfers to Purchaser, without recourse, upon payment of the Purchase Price, the Purchased Amount of Future Receipts by delivering to Purchaser the Specified Percentage of the proceeds of each future sale by Seller. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Credit Card") or other form of monetary payment in the ordinary course of Seller's business. BASED UPON SELLER'S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, SELLER IS CONFIDENT THAT THE PURCHASE PRICE PAID BY PURCHASER IN EXCHANGE FOR THE PURCHASED AMOUNT OF FUTURE RECEIPTS WILL BE USED IN A MANNER THAT WILL BENEFIT SELLER'S CURRENT AND FUTURE BUSINESS OPERATIONS.

| Purchase Price | $2,000,000.00 | Purchased Amount | $2,600,000.00 | Weekly Payment | | $52,000.00 | Specified Percentage | 5 % |
|---|---|---|---|---|---|---|---|---|
| Weekly Payment = (Monthly Average Sales X Specified Percentage ) / Four (Average Weeks in a Calendar Month) | | | | | | | | |

| Itemization of Fees Deducted from Purchase Price | | Amount Remitted to Seller: |
|---|---|---|
| | | $1,960,000.00 |
| Origination Fee: | $40,000.00 | |
| Funding Fee: | $0.00 | The Amount Remitted to Seller may include payments |
| ACH/Lockbox/CC Split Processing Fee: | $0.00 | made on Seller's behalf to satisfy prior obligations of |
| Payoff Existing Balance | $0.00 | Seller to Granite Merchant Funding, LLC or third parties. |
| Total: | ($40,000.00) | |

HC# 4877-0281-0196



Initial 1

Initial Here

GRANITE-001



Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

Seller shall (1) deposit all Future Receipts into only one bank account, which must be acceptable to and pre-approved by Purchaser (the "Account") and (2) instruct Seller's Credit Card processor, which processor must be acceptable to and pre-approved by Purchaser (the "Processor") who shall serve as Seller's sole Credit Card processor, to deposit all Credit Card receipts of Seller into the Account. Purchaser will debit the Weekly Payment from the Account each Week. Seller authorizes Purchaser to initiate electronic checks or ACH debits from the Account equal to the Weekly Payment each week and will provide Purchaser with all required account information. Seller will be responsible for any fees incurred by Purchaser resulting from a rejected electronic check or ACH debit attempt. Purchaser is not responsible for any overdrafts or rejected transactions that may result from Purchaser's debiting any amount authorized under the terms of this Agreement.

**Purchaser Acknowledgement.** There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser. Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Purchaser Is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks based on Seller's representations warranties and covenants in this Agreement, which are designed to give Purchaser a reasonable and fair opportunity to receive the benefit of its bargain.

**Changes to the Weekly Payment.** The Weekly Payment is intended to represent the Specified Percentage of Seller's Weekly Future Receipts. Once each calendar month, Seller or Purchaser may request a reconciliation to the Weekly Payment to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Any reconciliation request by Seller must be: (1) in writing; (2) include a copy of Seller 's bank statement for the most recent calendar month; and (3) be sent to Granite Merchant Funding by e-mail at: trueup@granitefunding.com. It is solely the Seller's responsibility to send a complete bank statement. Seller agrees to provide Purchaser any information requested by Purchaser to assist in this reconciliation. Within four business days of Purchaser's reasonable verification of such information, Purchaser shall adjust the Weekly Payment on a going-forward basis. The adjusted Weekly Payment will be based on Seller's actual Future Receipts from the 30-day period immediately prior to the date of Seller's reconciliation request times the Specified Percentage. Following this adjustment, the Weekly Payment will be in the same amount until a subsequent adjustment.

**Fees.** A list of all fees applicable under this Agreement is contained in Appendix A.

**THE "REVENUE BASED FINANCING AGREEMENT TERMS AND CONDITIONS" AND THE "PERFORMANCE GUARANTY" ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS REVENUE BASED FINANCING AGREEMENT.**

**Agreement to Seller:** By signing below Seller agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

**SELLER:**   MULFORD CONSTRUCTION CO., INC.

| BY: | (PRINT NAME & TITLE BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS SELLER |
|---|---|---|---|---|
| Kurt Merle Fowler | | ƙURT MERLE FOWLER | | ⬅ |
| BY: | (PRINT NAME & TITLE BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS SELLER |
| | | | | ⬅ |

**Agreement of Guarantor:** By signing below each Guarantor agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

**Notice:** This Agreement contains a personal guaranty of performance, and by signing below, you agree that you will be personally liable for the performance of certain obligations of the Seller under this Agreement as provided in the Performance Guaranty.

**OWNER/GUARANTOR:**

| FOR THE OWNER/GUARANTOR #1 | (PRINT NAME BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS OWNER/GUARANTOR |
|---|---|---|---|---|
| Kurt Merle Fowler | | ƙURT MERLE FOWLER | | ⬅ |
| FOR THE OWNER/GUARANTOR #2 | (PRINT NAME BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS OWNER/GUARANTOR |
| | | | | ⬅ |

HC# 4877-0281-0196

V.5.2

Initial Here

2

GRANITE-002

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

**Purchaser's payment of the Purchase Price shall be deemed Purchaser's acceptance and performance of this Agreement, notwithstanding Purchaser not executing this agreement.**

Each of above-signed Seller(s) and Owner(s) represent that he or she is authorized to sign this Agreement individually and on behalf of Seller and that the information provided herein and in all documents, forms and recorded interviews provided to or with Purchaser is true, accurate and complete in all respects. Seller and each of the above-signed Owners authorize Purchaser, its agents and representatives and any credit reporting agency engaged by Purchaser, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement, and (ii) obtain credit reports, including consumer credit reports at any time now or for so long as Seller and/or Owners(s) continue to have any obligation owed to Purchaser as a consequence of this Agreement or for Purchaser's ability to determine Seller's eligibility to enter into any future agreement with Purchaser.

## REVENUE BASED FINANCING AGREEMENT TERMS AND CONDITIONS

### I. TERMS OF ENROLLMENT IN PROGRAM

**1.1**  **(a) ACH Authorization.**  Seller shall execute an agreement (the "ACH Authorization") acceptable to Purchaser to authorize the use of the Automated Clearinghouse System (ACH) to retrieve the Weekly Payment from the Account. Seller shall provide Purchaser and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Seller's receivables, receipts, deposits and withdrawals into and from the Account. Seller hereby authorizes Purchaser and/or its agent(s) to deduct from the Account the Purchased Amount and any other amounts owed by Seller to Purchaser as specified herein and to pay such amounts to Purchaser. If an ACH transaction is rejected by Seller's financial institution for any reason other than a stop payment order placed by Seller with its financial institution, including without limitation insufficient funds, Seller agrees that Purchaser may resubmit any ACH transaction that is dishonored as permitted under the NACHA rules. In the event Purchaser makes an error in processing any payment or credit, Seller authorizes Purchaser to initiate ACH entries to or from the Account to correct the error. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Seller for these deposits, whether preapproved by Purchaser or not. This additional authorization is not a waiver of Purchaser's right to declare Seller in default if Seller uses an account that Purchaser did not first preapprove in writing. This authorization shall be irrevocable without the prior written consent of Purchaser.

**(b) Bank Holidays and Other Exceptions.**  Purchaser will debit the Weekly Payment each Week on a weekday the Bank is open and able to process ACH transactions. On the Weekday immediately following any Weekday or Weekdays on which the Bank was not open to process ACH transactions, Purchaser will debit the designated account on the following business day the Bank is open and able to process ACH transactions.

**1.2**  **Financial Condition.**  Seller and Guarantor(s) authorize Purchaser and its agents to investigate their financial responsibility and history, and will provide to Purchaser any authorizations, bank or financial statements, tax returns, etc., as Purchaser deems necessary in its sole discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Purchaser is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.3**  **Transactional History.**  Seller authorizes all of its banks and brokers and Credit Card processors to provide Purchaser with Seller's banking, brokerage and/or processing history to determine qualification or continuation in this program.

**1.4**  **Indemnification.**  Seller and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by Purchaser for monies owed to Purchaser from Seller and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by Purchaser.

**1.5**  **No Liability.**  In no event will Purchaser be liable for any claims asserted by Seller or Guarantor(s) under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Seller and Guarantor(s). In the event these claims are nonetheless raised, Seller and Guarantor(s) will be jointly liable for all of Purchaser's legal fees and expenses resulting therefrom. Seller and each Owner and each Guarantor hereby waives to the maximum extent permitted by law any claim for damages against Purchaser or any of its affiliates relating to any (i)investigation undertaken by or on behalf of Purchaser as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

HC# 4877-0281-0196

V-6.2



GRANITE-003

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

**1.6**   **Reliance on Terms.** Sections 1.1, 1.3, 1.4, 1.6 and 1.8 of this Agreement are agreed to for the benefit of Seller, Purchaser and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.7**   **Accounting Records, and Place of Business.** Purchaser or its designated representatives and agents shall have the right during Seller's normal business hours and at any other reasonable time to examine the interior and exterior of any of Seller's places of business. Purchaser may examine, among other things, whether Seller (a) has a place of business that is separate from any personal residence, (b) is open for business, and (c) has sufficient inventory to conduct Seller's business. When performing an examination, Purchaser may photograph the interior and exterior of any of Seller's places of business, including any signage, and may photograph any Owner. Purchaser or any of its agents shall have the right to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Seller's accounts or other transactions between the parties thereto and the general financial condition of Seller and Purchaser may remove any of such records temporarily for the purpose of having copies made thereof. Purchaser shall have the right to hire a Certified Public Accountant, licensed in the state where the business is located to perform analysis of the accounting records for the purpose of determining if the Specified Percentage of receipts has been made available for remittance to Purchaser. Seller hereby agrees to fully cooperate with such analysis upon the request of Purchaser.

**1.8**   **Collection from Third Parties.** Seller hereby grants Purchaser full authority to take any action or execute any instrument or document to settle all obligations due to Seller from any bank or Processor, or in the case of an occurrence of an Event of Default under Section 3 hereof, to Purchaser under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Purchased Amount; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iii) to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to Purchaser; (iv) to file any claims or take any action or institute any proceeding that Purchaser may deem necessary for the collection of any of the unpaid Purchased Amount, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by and from Seller and Purchaser is authorized to use Seller's funds to pay for same; and (v) Purchaser shall have the right, without waiving any of its rights and remedies and without notice to Seller or any Guarantor, to notify any Credit Card processor of the sale of Future Receipts and re-direct the remittance of all settlements to an account of Purchaser's choosing in order to settle all obligations due to Purchaser under this Agreement.

**1.9**   **Confidentiality.** Seller understands and agrees that the terms and conditions of the products and services offered by Purchaser, including this Agreement and any other Purchaser documentations (collectively, "Confidential Information") are proprietary and confidential information of Purchaser. Accordingly, unless disclosure is required by law or court order, Seller shall not disclose Confidential Information of Purchaser to any person other than an attorney, accountant, financial advisor or employee of Seller who needs to know such information for the purpose of advising Seller ("Advisor"), provided such Advisor uses Confidential Information solely for the purpose of advising Seller and first agrees in writing to be bound by the terms of this section. A breach hereof entitles Purchaser to not only damages and legal fees but also to both a temporary restraining order and a preliminary injunction without bond or security.

**1.10**   **D/B/As.** Seller hereby acknowledges and agrees that Purchaser may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between Purchaser and Seller, including the filing of UCC-1 financing statements and any other notices or filings.

**1.11**   **Application of Amounts Received.** Subject to applicable law, Purchaser reserves the right to apply any amounts received from Seller to any fees or other charges due to Purchaser from Seller prior to applying such amounts to reduce the undelivered balance of Purchased Amount.

**1.12**   **Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Purchaser pursuant to this Agreement are "accounts", "general intangibles", or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to

HC# 4877-0281-0196

Initial 4

Initial Here  LMF

V 6.2

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

Purchaser. To the extent the Future Receipts are "accounts" or "payment intangibles" then (i) the sale of the Future Receipts creates a security interest as defined in the UCC, (ii) this Agreement constitutes a "security agreement" under the UCC, and (iii) Purchaser has all the rights of a secured party under the UCC with respect to such Future Receipts. Seller further agrees that, with or without an Event of Default, Purchaser may notify account debtors, or other persons obligated on the Future Receipts, of Seller's sale of the Future Receipts and may instruct them to make payment or otherwise render performance to or for the benefit of Purchaser.

**1.13** **Financing Statements.** Seller hereby authorizes Purchaser to file one or more financing statements in order to give notice that the Purchased Amount of Future Receipts is the sole property of Purchaser. Each such filing may state that such sale is intended to be a sale and not an assignment for security and may state that the Seller is prohibited from obtaining any financing that impairs the value of the Future Receipts or Purchaser's right to collect same. Seller authorizes Purchaser to apply amounts received from Seller to costs incurred by Purchaser associated with the filing, amendment or termination of any such filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

**2.1** **Good Faith, Best Efforts and Due Diligence.** Seller will conduct its business in good faith and will use its best efforts to maintain and grow its business. Furthermore, Seller agrees, warrants and represents hereby that Seller will constantly perform all appropriate due diligence and credit checks of all of the customers' finances, cash flow, solvency, good faith, payment histories and business reputations as may be commercially reasonable to ensure any and all products and/or services provided, sold or delivered by Seller to said customers will be paid for by customers in full and on time, and will not result in the creation of an unpaid account. This is not a guaranty of payment by Seller 's customers but is an obligation of commercially reasonable due diligence investigation and credit check of customers before extending credit to them and continuing no less frequently than monthly so long as sums are still due. Seller will communicate with Purchaser including providing timely notice to Purchaser if the Account will have insufficient funds for any Weekly Payment amount so that Purchaser can reschedule any pending ACH debit from the Account.

**2.2** **Nonrecourse Sale of Payment Rights.** Seller represents and warrants that it is selling the Purchased Amount of Future Receipts to Purchaser in the ordinary course of Seller's business and the Purchase Price paid by Purchaser is good and valuable consideration for the sale. Seller is selling a portion of a future revenue stream to Purchaser at a discount, not borrowing money from Purchaser. Purchaser assumes the risk that Future Receipts will be remitted more slowly than Purchaser may have anticipated or projected because Seller 's business has slowed down, or the full Purchased Amount may never be remitted because Seller 's business went bankrupt or otherwise ceased operations in the ordinary course of business. By this Agreement, Seller transfers to Purchaser full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein.

**2.3** **Financial Condition and Financial Information.** Seller and Owner represent and warrant that Seller 's bank and financial statements, copies of which have been furnished to Purchaser, and future statements and other financial information that will be furnished hereafter at the request of Purchaser, fairly represent the financial condition of Seller at such dates. Purchaser may request bank statements and other financial information at any time during the performance of this Agreement and the Seller shall provide them to Purchaser within 5 business days. Seller 's failure to do so is a material breach of this Agreement.

**2.4** **Governmental Approvals.** Seller is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.5** **Authorization.** Seller and the person(s) signing this Agreement on behalf of Seller, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.6** **Insurance.** Seller will maintain business-interruption insurance naming Purchaser as loss payee and additional insured in amounts and against risks as are satisfactory to Purchaser and shall provide Purchaser proof of such insurance upon request.

**2.7** **Processor and Bank Account.** Seller will not change its Credit Card processor, add terminals, change its financial institution or bank account(s), use multiple bank accounts, or take any similar action that could interfere with Purchaser's ability to collect the Specified Percentage of the Future Receipts purchased under this Agreement, without Purchaser's prior written consent. Any such changes shall be a material breach of this Agreement.

HC# 4877-0281-0196

V-6.2

Initial Here — Initial 5 *LMF*

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

**2.8** **Change of Name, Type, Location or Sale of Business.** Seller will not conduct Seller's businesses under any name other than as disclosed to Processor and Purchaser, nor will Seller change any of its places of business or the type of business without prior written consent by Purchaser. Seller will not voluntarily sell, dispose, transfer or otherwise convey its business or substantially all business assets without (i) the express prior written consent of Purchaser, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Purchaser.

**2.9** **Weekly Batch Out.** Seller will ensure that all Credit Card transactions are communicated weekly to the Processor and not later than the day on which such transactions occurred.

**2.10** **Estoppel Certificate.** Seller will at all times, and from time to time, upon at least 1 day's prior notice from Purchaser to Seller, execute, acknowledge and deliver to Purchaser and/or to any other person, firm or corporation specified by Purchaser, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been delivered to Purchaser or the amount of the Purchased Amount that has not been delivered to Purchaser.

**2.11** **No Bankruptcy.** As of the date of this Agreement, Seller is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney within 6 months prior to the date of this Agreement, and that it has no present intention of closing its business or ceasing to operate its business, either permanently or temporarily, during the 6 month period after the date of this Agreement. Seller further warrants that as of the date of this Agreement, it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.12** **Sharing of Information.** Seller hereby authorizes Purchaser to share information regarding Seller's performance under this Agreement with affiliates and unaffiliated third parties.

**2.13** **Unencumbered Receipts.** Seller has good, complete, unencumbered and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Purchaser.

**2.14** **Business Purpose.** Seller is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates. Seller agrees to use the Purchase Price solely for business purposes, and not for personal, family or household purposes. Seller understands that Seller's agreement not to use the Purchase Price for personal, family or household purposes means certain important rights conferred upon consumers pursuant to federal or state law will not apply to this Agreement. Seller agrees that a breach by Seller of the provisions of this section will not affect Purchaser's rights to the Purchased Amount or to use any remedy legally available to Purchaser to obtain delivery of the Purchased Amount.

**2.15** **Defaults under Other Contracts.** Seller's execution of, and/or performance under this Agreement, will not cause or create an Event of Default by Seller under any contract with another person or entity.

**2.16** **Account.** Seller represents and warrants that (i) the Account is Seller's bank account; (ii) the person executing this Authorization on behalf of Seller is an authorized signer on the Account and has the power and authority to authorize Purchaser to initiate ACH transactions to and from the Account; (iii) the Account is a legitimate, open, and active bank account used solely for business purposes and not for personal, family or household purposes.

**2.17** **Specified Percentage Held in Trust.** Seller shall hold the Specified Percentage of the proceeds of each sale of goods and services in trust for the benefit of Purchaser and shall promptly deliver the Specified Percentage to Purchaser as provided herein.

**2.18** **Ordinary Course of Business.** Seller acknowledges that it is entering into this transaction and will deliver Future Receipts to Purchaser in the ordinary course of Seller's business.

HC# 4877-0281-0196

V-6.2



Initial Here

GRANITE-006

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

### III. EVENTS OF DEFAULT AND REMEDIES

**3.1** **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default": (a) Seller intentionally interferes with Purchaser's right to collect the Weekly Payment in violation of this Agreement; (b) Seller violates any term or covenant in this Agreement; (c) Any representation or warranty by Seller in this Agreement proves to have been incorrect, false or misleading in any material respect when made; (d) Seller defaults under any of the terms, covenants and conditions of any other agreement with Purchaser.

**3.2** **Remedies.** If any Event of Default occurs, Purchaser may proceed to protect and enforce its rights including, but not limited to, the following:

**A.** The Specified Percentage shall equal 100%. The full uncollected Purchased Amount plus all fees (including legal fees) due under this Agreement will become due and payable in full immediately.

**B.** Purchaser may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, under which Purchaser shall recover Judgment against Seller, Seller shall be liable for all of Purchaser's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Purchaser under this provision shall be limited as provided in the arbitration provision set forth in Section VIII.

**C.** Purchaser may debit Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Seller's bank account or otherwise for all sums due to Purchaser.

**D.** Seller shall pay to Purchaser all reasonable costs associated with the Event of Default and the enforcement of Purchaser's remedies set forth above, including but not limited to court costs and attorneys' fees.

Subject to arbitration as provided in Section VIII, all rights, powers and remedies of Purchaser in connection with this Agreement may be exercised at any time by Purchaser after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3** **Required Notifications.** Seller is required to give Purchaser written notice within 24 hours of any filing under Title 11 of the United States Code. Seller is required to give Purchaser 7 days' written notice prior to the closing of any sale of all or substantially all of the Seller's assets or stock.

### IV. MISCELLANEOUS

**4.1** **Modifications: Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Purchaser.

**4.2** **Assignment.** Purchaser may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

**4.3** **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to Purchaser shall become effective only upon receipt by Purchaser. Notices to Seller shall become effective three days after mailing.

**4.4** **No Waiver of Remedies.** No failure on the part of Purchaser to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5** **Binding Effect: Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Seller, Purchaser and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Purchaser which consent may be withheld in Purchaser's sole discretion. Except as set forth in Arbitration Section, this Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Purchaser so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Seller agrees that the Acceptable Forums are convenient to it, and submits to the

HC# 4877-0281-0196

V-6.2



Initial Here
7

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum. ADDITIONALLY, SELLER AND GUARANTOR AGREE THAT ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION BY PURCHASER WILL BE PROPERLY SERVED IF MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE MAILING ADDRESS(ES) LISTED ON PAGE 1 OF THIS AGREEMENT.

**4.6**    **Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7**    **Interpretation.** All Parties hereto have reviewed this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice or have been provided sufficient opportunity to have an attorney of their choosing review the Agreement. No construction determinations shall be made against any Party hereto as drafter.

**4.8**    **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9**    **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Performance Guaranty embody the entire agreement between Seller and Purchaser pertaining to the subject matter thereof and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10**    **Facsimile Acceptance.** Facsimile signatures hereon shall be deemed acceptable for all purposes.

**4.11**    **Monitoring, Recording, and Solicitations.** In Connection with servicing this Agreement, Seller and each Owner understand and agree to the following:

     **A.** **AUTHORIZATION TO CONTACT SELLER AND/OR OWNER BY TELEPHONE USING AN AUTOMATED TELEPHONE DIALING SYSTEM AND/OR ARTIFICIAL VOICES OR PRERECORDED MESSAGES.** Seller and/or each Owner authorize Purchaser, its affiliates, agents and independent contractors to contact Seller and each Owner at any telephone number, including via voice calls and text messages at any mobile telephone number, Seller or any Owner provides to Purchaser or from which Seller or any Owner places a call to Purchaser using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller or and Owner incurs charges for receiving such communications. Seller and Owner understand that consent to contact by automated telephone dialing system and/or artificial voices or prerecorded messages may be revoked at any reasonable time and by any reasonable means.

     **B.** **AUTHORIZATION TO CONTACT SELLER BY OTHER MEANS.** Seller and each Owner also agree that Purchaser, its affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to telephone calls to mobile or landline telephones and text messages to mobile telephones via a device that is not an automated telephone dialing system, mail, e-mail and facsimile, to contact Seller and each Owner. Seller and each Owner expressly consent to conduct business by electronic means.

     **C.** **CEASE COMMUNICATION REQUESTS.** Seller and each Owner understand that to make a request that Purchaser stop all communications, Seller or Owner must write to Purchaser at the following address: Granite Merchant Funding at 102 W 38th Street, 6th - Floor, New York NY 10018. If Seller and/or Owner makes a cease communication request in writing, Purchaser shall not communicate further with Seller and/or Owner (as the case may be) except: (1) to advise that Purchaser's further efforts are being terminated; (2) to notify Seller and/or Owner (as the case may be) that Purchaser may invoke specified remedies which are ordinarily invoked by Purchaser; or (3) to notify Seller and/or Owner (as the case may be) that Purchaser Intends to invoke a specified remedy. Any Owner authorized to act as an agent of Seller may make a cease communication request on behalf of Seller, but Seller may not make a cease communication request on behalf of any Owner. (Continued on Page 9)

HC# 4877-0281-0196

V 6.2



Initial Here   Initial 8

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

A cease communication request made by telephone or some means other than in writing as specified in the paragraph directly above will result in Purchaser ceasing only telephone contact by automated telephone dialing system and/or artificial voices or prerecorded messages.

To discuss changes to communication preferences, such as a change in telephone number, email address, or mailing address, or convenient hours of communication, please call Granite Merchant Funding at 888-526-0187.

## V. PERFORMANCE GUARANTY.

**5.1**    **Personal Guaranty of Performance.**    Guarantor (i) will derive direct or indirect economic benefit from this Agreement and (ii) is directly or indirectly involved in the business operations of Seller. As an inducement to Purchaser to purchase the Future Receipts, Guarantor agrees to irrevocably, absolutely and unconditionally guarantee to Purchaser prompt and complete performance of the following obligations of Seller (the "Guaranteed Obligations"):

**5.1.1**    Seller's obligation to provide bank statements and other financial information that fairly represent the financial condition of Seller at such dates, within 5 business days after request from Purchaser;

**5.1.2**    Seller's obligation to not change its Credit Card processor, add terminals, change its financial institution or bank account(s), use multiple bank accounts, or take any similar action that could have an adverse effect upon Seller's obligations under this Agreement, without Purchaser's prior written consent;

**5.1.3**    Seller's obligation to not conduct Seller's businesses under any name other than as disclosed to Processor and Purchaser;

**5.1.4**    Seller's obligation to not change any of its places of business or the type of business without prior written consent by Purchaser; and

**5.1.5**    Seller's obligation to not voluntarily sell, dispose, transfer or otherwise convey its business or substantially all business assets without (i) the express prior written consent of Purchaser, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Purchaser.

In the event that Seller fails to perform any of the Guaranteed Obligations, Purchaser may recover from Guarantor for all of Purchaser's losses and damages and all remedies specified in Section 3.2 of this Agreement by enforcement of Purchaser's rights under this Performance Guaranty without first seeking to obtain payment from Seller or any other guarantor, or any other guaranty.

**5.2**    **Guarantor Waivers.**    Purchaser does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under the Agreement and this Performance Guaranty if it is not notified of: (i) Seller's failure to pay timely perform any obligation under the Agreement; (ii) any adverse change in Seller's financial condition or business; (iii) Purchaser's acceptance of the Agreement; and (iv) any renewal, extension or other modification of the Agreement or Seller's other obligations to Purchaser. In addition, Purchaser may take any of the following actions without releasing Guarantor from any of its obligations under the Agreement and this Performance Guaranty: (i) renew, extend or otherwise modify the Agreement or Seller's other obligations to Purchaser; and (ii) release Seller from its obligations to Purchaser. Guarantor shall not seek reimbursement from Seller or any other guarantor for any amounts paid by it under the Agreement or this Performance Guaranty. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Seller, or any other guarantor, for any amounts paid by it, or acts performed by it, under the Agreement or this Performance Guaranty: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that Purchaser must return any amount paid by Seller or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under the Agreement and this Performance Guaranty shall include that amount.

**5.3**    **Guarantor Acknowledgement.**    Guarantor acknowledges that Guarantor understands the seriousness of the provisions of the Agreement, including the Jury Trial Waiver and Arbitration sections, and has had a full opportunity to consult with counsel their choice; and have consulted with counsel or have decided not to avail himself / herself / themselves of that opportunity.

## VI. JURY TRIAL WAIVER.

THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

HC# 4877-0281-0196

V-6.2



Initial Here

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

## VII. CLASS ACTION WAIVER.

PURCHASER, SELLER, AND EACH GUARANTOR ACKNOWLEDGE AND AGREE THAT THE AMOUNT AT ISSUE IN THIS TRANSACTION AND ANY DISPUTES THAT ARISE BETWEEN THEM ARE LARGE ENOUGH TO JUSTIFY DISPUTE RESOLUTION ON AN INDIVIDUAL BASIS. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

## VIII. ARBITRATION.

IF PURCHASER, SELLER OR A GUARANTOR REQUESTS, THE OTHER PARTY(S) AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF A PARTY SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO EACH OTHER PARTY, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF THE PARTIES DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, ANY PARTY MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR THE FORUM. PURCHASER WILL PROMPTLY REIMBURSE SELLER OR THE GUARANTOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH THE SELLER AND THE GUARANTOR MUST PAY FILING FEES, PURCHASER WILL ONLY REIMBURSE THE SELLER'S ARBITRATION FILING FEE. EXCEPT AS PROVIDED IN THE NEXT SENTENCE, PURCHASER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY SELLER OR THE GUARANTOR(S) OR THE RELIEF SOUGHT BY SELLER OR THE GUARANTOR(S) IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN PURCHASER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR FORUM RULES. IF THE ARBITRATOR GRANTS RELIEF TO THE SELLER OR THE GUARANTOR(S) THAT IS EQUAL TO OR GREATER THAN THE VALUE OF WHAT THE SELLER OR THE GUARANTOR(S) REQUESTED IN THE ARBITRATION, PURCHASER SHALL REIMBURSE SELLER OR THE GUARANTOR(S) FOR THAT PERSON'S REASONABLE ATTORNEYS' FEES AND EXPENSES INCURRED FOR THE ARBITRATION. SELLER AND THE GUARANTOR(S) AGREE THAT, BY ENTERING INTO THIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. EACH PARTY AND THE GUARANTOR(S) MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION DEALING WITH THE PROHIBITION ON CONSOLIDATED, CLASS OR AGGREGATED CLAIMS IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID. THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGULATING THE ARBITRATION OF DISPUTES. THIS AGREEMENT IS FINAL AND BINDING EXCEPT TO THE EXTENT THAT AN APPEAL MAY BE MADE UNDER THE FAA. ANY ARBITRATION DECISION RENDERED PURSUANT TO THIS ARBITRATION AGREEMENT MAY BE ENFORCED IN ANY COURT WITH JURISDICTION. THE TERMS "DISPUTES" AND "CLAIMS" SHALL HAVE THE BROADEST POSSIBLE MEANING.

SELLER AND ANY GUARANTOR MAY OPT-OUT OF THIS CLAUSE. TO OPT-OUT OF THIS ARBITRATION CLAUSE, SELLER AND/OR GUARANTOR MAY SEND PURCHASER A NOTICE THAT THE SELLER OR GUARANTOR DOES NOT WANT THIS CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT-OUT TO BE EFFECTIVE, SELLER AND/OR GUARANTOR MUST SEND AN OPT-OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT:

Customer Service Department
Granite Merchant Funding
102 W 38th Street
6th - Floor
New York, NY 10018

| GUARANTOR #1 | (PRINT NAME BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS OWNER |
|---|---|---|---|---|
| Kurt Merle Fowler | | Signed by: KURT MERLE FOWLER | | ← |
| GUARANTOR #2 | (PRINT NAME BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS OWNER |
| | | | | ← |

HC# 4877-0281-0196

V-6.2


Initial 10
Initial Here  KMF

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

## AGREEMENT FOR DIRECT DEPOSITS (ACH CREDITS)
## AND DIRECT COLLECTIONS (ACH DEBITS)

**DEFINITIONS:**

**Purchaser:** Granite Merchant Funding. LLC D/B/A Granite Merchant Funding

**Seller:** MULFORD CONSTRUCTION CO., INC.

**Designated Bank Account:**    MULFORD CONSTRUCTION CO., INC.

(Name of account exactly as it appears on your Bank Statements or Bank Letters)

| Bank Name: | Shore United | Branch: | Prince Frederick | Tax ID: | ▓▓▓▓ |
|---|---|---|---|---|---|
| ABA: Routing: | ▓▓▓▓ | | DDA: Account No: | ▓▓▓▓ | |

**Additional Alternate Bank Account(s), if any, are listed on the attached Appendix "A"**

**Purchase and Sale Agreement:** Revenue Based Financing Agreement between Seller and Purchaser, dated as of 05/29/2025

**NACHA RULES:**The Rules and Operating Guidelines of NACHA – The Electronic Payments Association

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Purchase and Sale Agreement.

**This Agreement for Direct Deposits (ACH Credits) and Direct Collections (ACH Debits) is part of (and incorporated by reference into) the Revenue Based Financing Agreement. Seller should keep a copy of this important legal document for Seller's records.**

**DISBURSEMENT OF PURCHASE PRICE.** By signing below, Seller authorizes Purchaser, after electing to purchase the Purchased Amount, to disburse the Purchase Price (less any applicable fees) set forth in the Revenue Based Financing Agreement, or to disburse other amounts due to Seller under the Revenue Based Financing Agreement, by initiating an ACH credit to the Designated Bank Account.

**COLLECTION OF FUNDS ARISING FROM FUTURE RECEIPTS.** By signing below, Seller authorizes Purchaser to collect amounts Purchaser is entitled to receive under the Revenue Based Financing Agreement by initiating ACH debits to the Designated Bank Account, as follows:

For the amount of $52,000.00 (or) Percentage of each banking deposit: 5 %

On the Weekday following five (5) Business days from the date of tender of the Purchase Price to Seller, Seller's Designated Bank Account shall be debited. On the business day immediately following any business day(s) on which Seller's bank was not open or was not able to process ACH transactions, the Purchaser will debit Designated Bank Account for an amount equal to the Weekly Payment amount due on that business day.

If an ACH debit from the Designated Bank Account is rejected by Seller's financial institution for any reason other than termination (as further defined in this agreement), Seller authorizes Purchaser to initiate an additional ACH debit to the Alternate Bank Account(s) to collect the amounts due to Purchaser.

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

**MISCELLANEOUS.** If any ACH transaction date falls on a weekend or holiday, Seller understands and agrees that the transaction may be executed on the next business day. If a transaction is rejected by Seller's financial institution for any reason other than termination of this authorization, including without limitation insufficient funds, Seller understands that Purchaser may, at its discretion, attempt to process the transaction again as permitted under the NACHA Rules. Seller also authorizes Purchaser to initiate ACH entries to correct any erroneous payment transaction. Seller understands that Seller is responsible for ensuring that funds arising from Future Receipts remain in the Designated Bank Account each day until Purchaser debits the amount that the Revenue Based Financing Agreement authorizes Purchaser to debit from the Designated Bank Account for that day. By signing below, Seller attests that both the Designated Bank Account and the Alternate Bank Account(s) were established for business purposes and not primarily for personal, family or household purposes.

Purchaser is not responsible for any overdrafts, rejected transactions, or fees that may result from credits or debits initiated under this Agreement. The origination of ACH transactions to the Designated Bank Account and the Alternate Bank Account(s) must comply with, and both Purchaser and Seller agree to be bound by, the provisions of applicable law and the NACHA Rules.

Seller authorizes Purchaser to contact Seller's financial institution to obtain available funds information and/or to verify any information Seller has provided about the Designated Bank Account and/or the Alternate Bank Account(s) and to correct any missing, erroneous or out-of-date information. Seller understands and agrees that any revocation or attempted revocation of this Authorization will constitute an event of default under the Revenue Based Financing Agreement. In the event that Seller closes the Designated Bank Account and the Alternate Bank Account(s), or the Designated Bank Account t and the Alternate Bank Account(s) have insufficient funds for any ACH transaction under this Authorization, Seller authorizes Purchaser to contact Seller's financial institution and obtain information (including account number, routing number and available balance) concerning any other deposit account(s) maintained by Seller with Seller's financial institution, and to initiate ACH transactions under this Authorization to such additional account(s). To the extent necessary, Seller grants Purchaser a limited Power of Attorney to take action in Seller's name to facilitate this authorization.

This authorization is to remain in full force and effect until Purchaser has received written notification from Seller at 102 W 38th Street, 6th - Floor, New York, NY 10018 at least 5 banking days prior to its termination to afford the Purchaser a reasonable opportunity to act on it.

The individual signing below on behalf of Seller certifies that he/she is an authorized signer on the Designated Bank Account and the Alternate Bank Account(s). Seller will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Seller requests the financial institution(s) that hold(s) the Designated Bank Account and the Alternate Bank Account(s) to honor all ACH entries initiated in accordance with this Authorization Agreement.

Seller: MULFORD CONSTRUCTION CO., INC.

First Owner Sign Here: _KURT MERLE FOWLER_

First Owner Print Name: CE4D6550F4E546F Kurt Merle Fowler

First Owner Title: _____  Date: 5/29/2025

Second Owner Sign Here: _____

Second Owner Print Name: _____

Second Owner Title: _____  Date: _____

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

## AGREEMENT FOR DIRECT DEPOSITS (ACH CREDITS)
## AND DIRECT COLLECTIONS (ACH DEBITS)
### Appendix "A"

**Alternate Bank Account:** _____

(Name of account exactly as it appears on your Bank Statements or Bank Letters)

Bank Name: _____ Branch: _____ Tax ID: ██████████

ABA: Routing: _____ DDA: Account No: _____

**Alternate Bank Account:** _____

(Name of account exactly as it appears on your Bank Statements or Bank Letters)

Bank Name: _____ Branch: _____ Tax ID: ██████████

ABA: Routing: _____ DDA: Account No: _____

**Alternate Bank Account:** _____

(Name of account exactly as it appears on your Bank Statements or Bank Letters)

Bank Name: _____ Branch: _____ Tax ID: ██████████

ABA: Routing: _____ DDA: Account No: _____

Seller: MULFORD CONSTRUCTION CO., INC.

First Owner Sign Here: _KURT MERLE FOWLER_____ Date: 5/29/2025

First Owner Print Name: CE4D6550F4E5462 Kurt Merle Fowler First Owner Title: _____

Second Owner Sign Here: _____ Date: _____

Second Owner Print Name: _____ Second Owner Title: _____

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA

# Addendum to Revenue Based Financing Agreement

**Origination fee:** This fee is paid by the Seller to Granite Merchant Funding, LLC to cover the costs of underwriting. These fees include the cost of credit reports, site inspection fees, and other administrative costs.

<u>Origination Fee</u>

2% of Purchase Price

**Funding fee:** $0.00 – For same day wire transfer

**ACH / Lockbox / CC Split Processing Fee:** The administrative setup and maintenance of these programs is labor intensive, not an automated process, and have fees we pay, requiring us to charge this fee to cover those costs.

<u>Processing Fee</u>

$0.00

*The three fees mentioned above will be deducted from the proceeds of your advance. The fee being paid is the amount associated with the dollar amount of your advance.*

| | | |
|---|---|---|
| **Bank Change Fee:** | For each change of account requested, account may only be changed to another commercial checking account. | <u>$75.00</u> |
| **NSF Fee:** | | <u>$35.00 per NSF</u> |
| **Rejected ACH:** | If an ACH is rejected based on any action taken by the Seller to our specific ACH debit or All ACH debits without prior notification and authorization by Purchaser. | <u>$100.00 per incident</u> |
| **Default Fee:** | Charged to Seller in the Event of Default. | <u>$5,000.00</u> |
| **UCC Filling Fee:** | | <u>$250.00</u> |

Business Name: MULFORD CONSTRUCTION CO., INC.

First Owner Sign Here: KURT MERLE FOWLER

First Owner Print Name: Kurt Merle Fowler

First Owner Title: _____  Date: 5/29/2025

Second Owner Sign Here: _____

Second Owner Print Name: _____

Second Owner Title: _____  Date: _____

GRANITE-014

Docusign Envelope ID: B92525AA-E74B-42DC-A006-54E104EA83FA



## Bank Login Information

Dear Seller,

Thank you for accepting this offer from Granite Merchant Funding, LLC. We look forward to being your funding partner for as long as you need.

## Weekly ACH Program:

Granite Merchant Funding, LLC will require viewing access to your bank account in order to verify the amount of your Weekly payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

Granite Merchant Funding, LLC will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower case letters.

Name of Bank: _____

Bank portal website: _____

Username: _____

Password: _____

Security Question / Answer 1: _____

Security Question / Answer 2: _____

Security Question / Answer 3: _____

Any other information necessary to access your account:

_____

Signed by:

KURT MERLE FOWLER _____   5/29/2025

CE4D6550F4E5487...

Seller / Owner Signature                                    Date

GRANITE-015



# EXHIBIT B

EXHIBIT B

# GRANITE
## MERCHANT FUNDING

| | | | | MULFORD CONSTRUCTION CO., INC. (# ████ ) BALANCE DUE ( $834,785.00 ) | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Transaction Amount | Amount Paid | Pay-Off Balance | Transaction Description | Comments | Settle Date | Booked By |
| 3/20/2026 3:42 PM | -$250.00 | $1,768,000.00 | $834,785.00 | | UCC Fee | 3/20/2026 3:42 PM | Employee System |
| 3/20/2026 12:00 PM | -$2,500.00 | $1,768,000.00 | $834,535.00 | | Default Fee | 3/20/2026 12:00 PM | Employee System |
| 3/18/2026 12:00 AM | $0.00 | $1,768,000.00 | $832,035.00 | ACH Payment Failed- Return Code:R08 for $52,000.00 with Ref Id:13238748 | Fifth-Third GRN::AUTOMATION - Effective Date: March 18 | 3/20/2026 8:49 AM | Employee System |
| 3/18/2026 12:00 AM | -$35.00 | $1,768,000.00 | $832,035.00 | | NSF FEE (1 of 4) for 3/18/2026 (13238748) | 3/20/2026 12:00 PM | Employee System |
| 3/13/2026 12:00 AM | $26,000.00 | $1,768,000.00 | $832,000.00 | Ref Id: 13225811 | Fifth-Third GRN::AUTOMATION - Effective Date: March 13 | 3/18/2026 8:50 AM | Employee System |
| 3/6/2026 12:00 AM | $26,000.00 | $1,742,000.00 | $858,000.00 | Ref Id: 13203449 | Fifth-Third GRN::AUTOMATION - Effective Date: March 6 | 3/11/2026 8:53 AM | Employee System |
| 2/27/2026 12:00 AM | $26,000.00 | $1,716,000.00 | $884,000.00 | Ref Id: 13180306 | Fifth-Third GRN::AUTOMATION - Effective Date: February 27 | 3/4/2026 8:58 AM | Employee System |
| 2/20/2026 12:00 AM | $26,000.00 | $1,690,000.00 | $910,000.00 | Ref Id: 13156386 | Fifth-Third GRN::AUTOMATION - Effective Date: February 20 | 2/25/2026 8:54 AM | Employee System |
| 2/13/2026 12:00 AM | $26,000.00 | $1,664,000.00 | $936,000.00 | Ref Id: 13134793 | Fifth-Third GRN::AUTOMATION - Effective Date: February 13 | 2/19/2026 9:00 AM | Employee System |
| 2/6/2026 12:00 AM | $26,000.00 | $1,638,000.00 | $962,000.00 | Ref Id: 13109357 | Fifth-Third GRN::AUTOMATION - Effective Date: February 6 | 2/11/2026 8:54 AM | Employee System |
| 1/28/2026 12:00 AM | $52,000.00 | $1,612,000.00 | $988,000.00 | Ref Id: 13072764 | Fifth-Third GRN::AUTOMATION - Effective Date: January 28 | 2/2/2026 8:56 AM | Employee System |
| 1/21/2026 12:00 AM | $52,000.00 | $1,560,000.00 | $1,040,000.00 | Ref Id: 13045653 | Fifth-Third GRN::AUTOMATION - Effective Date: January 21 | 1/26/2026 8:58 AM | Employee System |
| 1/14/2026 12:00 AM | $52,000.00 | $1,508,000.00 | $1,092,000.00 | Ref Id: 13021101 | Fifth-Third GRN::AUTOMATION - Effective Date: January 14 | 1/20/2026 8:57 AM | Employee System |
| 1/7/2026 12:00 AM | $52,000.00 | $1,456,000.00 | $1,144,000.00 | Ref Id: 12992441 | Fifth-Third GRN::AUTOMATION - Effective Date: January 7 | 1/12/2026 8:59 AM | Employee System |
| 12/31/2025 12:00 AM | $52,000.00 | $1,404,000.00 | $1,196,000.00 | Ref Id: 12966594 | Fifth-Third GRN::AUTOMATION - Effective Date: December 31 | 1/6/2026 8:58 AM | Employee System |
| 12/22/2025 12:00 AM | $52,000.00 | $1,352,000.00 | $1,248,000.00 | Ref Id: 12927868 | Fifth-Third GRN::AUTOMATION - Effective Date: December 22 | 12/26/2025 9:05 AM | Employee System |
| 12/17/2025 12:00 AM | $31,200.00 | $1,300,000.00 | $1,300,000.00 | Ref Id: 12908976 | Fifth-Third GRN::AUTOMATION - Effective Date: December 17 | 12/22/2025 9:03 AM | Employee System |
| 12/10/2025 12:00 AM | $31,200.00 | $1,268,800.00 | $1,331,200.00 | Ref Id: 12876728 | Fifth-Third GRN::AUTOMATION - Effective Date: December 10 | 12/15/2025 9:05 AM | Employee System |
| 12/3/2025 12:00 AM | $31,200.00 | $1,237,600.00 | $1,362,400.00 | Ref Id: 12843134 | Fifth-Third GRN::AUTOMATION - Effective Date: December 3 | 12/8/2025 9:06 AM | Employee System |
| 11/26/2025 12:00 AM | $31,200.00 | $1,206,400.00 | $1,393,600.00 | Ref Id: 12812540 | Fifth-Third GRN::AUTOMATION - Effective Date: November 26 | 12/2/2025 9:09 AM | Employee System |
| 11/21/2025 12:00 AM | $52,000.00 | $1,175,200.00 | $1,424,800.00 | Ref Id: 12791080 | Fifth-Third GRN::AUTOMATION - Effective Date: November 21 | 11/26/2025 9:20 AM | Employee System |
| 11/12/2025 12:00 AM | $52,000.00 | $1,123,200.00 | $1,476,800.00 | Ref Id: 12739155 | Fifth-Third GRN::AUTOMATION - Effective Date: November 12 | 11/17/2025 9:42 AM | Employee System |
| 11/5/2025 12:00 AM | $52,000.00 | $1,071,200.00 | $1,528,800.00 | Ref Id: 12706323 | Fifth-Third GRN::AUTOMATION - Effective Date: November 5 | 11/10/2025 9:26 AM | Employee System |
| 10/29/2025 12:00 AM | $52,000.00 | $1,019,200.00 | $1,580,800.00 | Ref Id: 12668627 | Fifth-Third GRN::AUTOMATION - Effective Date: October 29 | 11/3/2025 9:21 AM | Employee System |
| 10/22/2025 12:00 AM | $52,000.00 | $967,200.00 | $1,632,800.00 | Ref Id: 12630202 | Fifth-Third GRN::AUTOMATION - Effective Date: October 22 | 10/27/2025 9:49 AM | Employee System |
| 10/14/2025 12:00 AM | $52,000.00 | $915,200.00 | $1,684,800.00 | Ref Id: 12583197 | Fifth-Third GRN::AUTOMATION - Effective Date: October 14 | 10/17/2025 9:18 AM | Employee System |
| 10/8/2025 12:00 AM | $31,200.00 | $863,200.00 | $1,736,800.00 | Ref Id: 12556507 | Fifth-Third GRN::AUTOMATION - Effective Date: October 8 | 10/14/2025 10:44 AM | Employee System |
| 10/1/2025 12:00 AM | $31,200.00 | $832,000.00 | $1,768,000.00 | Ref Id: 12517348 | Fifth-Third GRN::AUTOMATION - Effective Date: October 1 | 10/6/2025 8:44 AM | Employee System |
| 9/22/2025 12:00 AM | $52,000.00 | $800,800.00 | $1,799,200.00 | Ref Id: 12463098 | Fifth-Third GRN::AUTOMATION - Effective Date: September 22 | 9/25/2025 8:44 AM | Employee System |
| 9/17/2025 12:00 AM | $31,200.00 | $748,800.00 | $1,851,200.00 | Ref Id: 12439909 | Fifth-Third GRN::AUTOMATION - Effective Date: September 17 | 9/22/2025 8:44 AM | Employee System |
| 9/10/2025 12:00 AM | $31,200.00 | $717,600.00 | $1,882,400.00 | Ref Id: 12401692 | Fifth-Third GRN::AUTOMATION - Effective Date: September 10 | 9/15/2025 9:10 AM | Employee System |
| 9/3/2025 12:00 AM | $31,200.00 | $686,400.00 | $1,913,600.00 | Ref Id: 12364006 | Fifth-Third GRN::AUTOMATION - Effective Date: September 3 | 9/8/2025 9:05 AM | Employee System |
| 8/27/2025 12:00 AM | $31,200.00 | $655,200.00 | $1,944,800.00 | Ref Id: 12331235 | Fifth-Third GRN::AUTOMATION - Effective Date: August 27 | 9/2/2025 9:06 AM | Employee System |
| 8/18/2025 12:00 AM | $52,000.00 | $624,000.00 | $1,976,000.00 | Ref Id: 12279758 | Fifth-Third GRN::AUTOMATION - Effective Date: August 18 | 8/21/2025 9:09 AM | Employee System |
| 8/13/2025 12:00 AM | $52,000.00 | $572,000.00 | $2,028,000.00 | Ref Id: 12257883 | Fifth-Third GRN::AUTOMATION - Effective Date: August 13 | 8/18/2025 10:51 AM | Employee System |
| 8/4/2025 12:00 AM | $52,000.00 | $520,000.00 | $2,080,000.00 | Ref Id: 12208073 | Fifth-Third GRN::AUTOMATION - Effective Date: August 4 | 8/7/2025 9:05 AM | Employee System |
| 7/28/2025 12:00 AM | $52,000.00 | $468,000.00 | $2,132,000.00 | Ref Id: 12173171 | Fifth-Third GRN::AUTOMATION - Effective Date: July 28 | 7/31/2025 9:01 AM | Employee System |
| 7/21/2025 12:00 AM | $52,000.00 | $416,000.00 | $2,184,000.00 | Ref Id: 12138661 | Fifth-Third GRN::AUTOMATION - Effective Date: July 21 | 7/24/2025 8:47 AM | Employee System |
| 7/14/2025 12:00 AM | $52,000.00 | $364,000.00 | $2,236,000.00 | Ref Id: 12104470 | Fifth-Third GRN::AUTOMATION - Effective Date: July 14 | 7/17/2025 9:00 AM | Employee System |
| 7/7/2025 12:00 AM | $52,000.00 | $312,000.00 | $2,288,000.00 | Ref Id: 12070937 | Fifth-Third GRN::AUTOMATION - Effective Date: July 7 | 7/10/2025 9:21 AM | Employee System |

GRANITE-016

| 6/30/2025 12:00 AM | $52,000.00 | $260,000.00 | $2,340,000.00 | Ref Id: 12041658 | Fifth-Third GRN::AUTOMATION - Effective Date: June 30 | 7/3/2025 8:55 AM | Employee System |
|---|---|---|---|---|---|---|---|
| 6/23/2025 12:00 AM | $52,000.00 | $208,000.00 | $2,392,000.00 | Ref Id: 12008843 | Fifth-Third GRN::AUTOMATION - Effective Date: June 23 | 6/26/2025 8:54 AM | Employee System |
| 6/16/2025 12:00 AM | $52,000.00 | $156,000.00 | $2,444,000.00 | Ref Id: 11980099 | Fifth-Third GRN::AUTOMATION - Effective Date: June 16 | 6/20/2025 8:52 AM | Employee System |
| 6/9/2025 12:00 AM | $52,000.00 | $104,000.00 | $2,496,000.00 | Ref Id: 11948011 | Fifth-Third GRN::AUTOMATION - Effective Date: June 9 | 6/12/2025 8:51 AM | Employee System |
| 6/2/2025 12:00 AM | $52,000.00 | $52,000.00 | $2,548,000.00 | Ref Id: 11916488 | Fifth-Third GRN::AUTOMATION - Effective Date: June 2 | 6/5/2025 8:23 AM | Employee System |
| 5/30/2025 8:58 AM | $0.00 | $0.00 | $2,600,000.00 | | AUTOMATION - Wire Fee | 5/30/2025 8:58 AM | Employee System |
| 5/30/2025 8:58 AM | -$40,000.00 | $0.00 | $2,600,000.00 | | AUTOMATION - Origination Fee | 5/30/2025 8:58 AM | Employee System |
| 5/30/2025 8:58 AM | $0.00 | $0.00 | $2,600,000.00 | | AUTOMATION - ACH Setup Fee | 5/30/2025 8:58 AM | Employee System |
| 5/30/2025 8:58 AM | -$600,000.00 | $0.00 | $2,600,000.00 | | AUTOMATION - Merchant Deal Advance Fee | 5/30/2025 8:58 AM | Employee System |
| 5/30/2025 8:58 AM | -$2,000,000.00 | $0.00 | $2,600,000.00 | | AUTOMATION - Merchant Deal Advance | 5/30/2025 8:58 AM | Employee System |

GRANITE-017

# EXHIBIT C



# UCC-1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

CSC

801 Adlai Stevenson Drive

Springfield, IL 62703

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

MD DEPT. OF ASSESSMENTS & TAXATION
260320-1545000 03/20/2031 S
Lapse Date: 03/20/2031
Date: 3/20/2026
Time: 3:45 PM
Page Count: 1 Pg
Debtor Count: 1
Filing Fees: $25.00
Electronic Records Access: $4.50
Total: $29.50
Order ID#

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| MULFORD CONSTRUCTION CO., INC. | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 171 SKIPJACK RD | PRINCE FREDERICK | MD / 20678 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Corporation Service Company, as Representative | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| P.O. Box 2576 uccsprep@cscinfo.com | Springfield | IL / 62708 | US |

4. COLLATERAL: This financing statement covers the following collateral:

Secured Party has purchased certain "Future Receipts" from Debtor. "Future Receipts" means all payments made to Debtor by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card or other form of monetary payment in the ordinary course of Debtor's business. Debtor and Secured Party intend that the sale of Future Receipts is a sale and not an assignment for security. Notice: Pursuant to the agreement between Debtor and Secured Party, Debtor is prohibited from obtaining any financing that impairs the value of the Future Receipts or Secured Party's right to collect same

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
3405 32620

(Rev. 07/01/23)

GRANITE-018